982 So.2d 136 (2008)
STATE of Louisiana
v.
Barry N. ARABIE.
No. 07-KA-806.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 2008.
*138 Paul D. Connick, District Attorney, Terry M. Boudreaux, Thomas J. Butler, Kenneth Bordelon, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant/appellant, Barry Arabie ("Arabie"), was tried by a twelve-person jury on one count of aggravated rape in violation of LSA-R.S. 14:42, and two counts of aggravated incest of a juvenile in violation of LSA-R.S. 14:78.1. He was found guilty on all counts and sentenced to life imprisonment on count one, aggravated rape, and 25 years on each count of aggravated incest. The sentences were imposed without the benefit of parole, probation, or suspension of sentence and were ordered to run concurrently with each other. Arabie appeals his conviction and sentence. We affirm and remand with instructions.
On May 28, 2006, C.S., age 11, was spending the night with her Aunt Ashley when she told her aunt that, sometime prior to Hurricane Katrina, Arabie, her step-father, had raped her. According to Ashley, C.S. stated Arabie licked her "thingy," which Ashley testified is how C.S. refers to her vagina. C.S., who was shaking and crying hysterically, begged Ashley not to tell anyone because she was embarrassed. Ashley advised C.S. that the police would have to be called at which time C.S. asked if she could call her mother first.
Ashley called C.S.'s mother, Melissa, who immediately came to the house. Ashley told Melissa what C.S. had said and Melissa became hysterical. Melissa yelled at C.S. asking her why she did not tell her and then called Arabie several times on her cell phone to confront him. She told Arabie that she had learned he touched and licked C.S. According to Melissa, at some point after telling Arabie of the allegations, he simply said, "yes." Melissa explained that Arabie never expressly admitted a particular act that was performed on C.S. However, after he was arrested, Arabie told Melissa that he did not do it.
After she spoke with Arabie, Melissa left Ashley's house at which time Ashley called the police. Detective Pamela Laborie ("Detective Laborie") responded to the 911 *139 call of alleged sexual abuse by proceeding to the Arabie residence. When she arrived, Arabie was standing outside and confirmed his identity when approached by the detective. Detective Laborie advised him that he was under investigation for molestation of his daughter and he agreed to give a statement in Detective Laborie's police unit. Arabie was advised of his rights and executed a rights of suspect form demonstrating he understood and wished to waive his rights. The statement was not taped but, rather, Detective Laborie asked the questions and wrote down the answers verbatim. Arabie was given an opportunity to review the written statement and subsequently signed it, indicating he agreed with what was written. In the written statement, Arabie admitted showing C.S. his penis, having C.S. show him her vagina by pulling down her pants, and licking the outside of C.S.'s vagina. He didn't know why he did it, and he denied any vaginal penetration, indicating that this took place on one occasion.
In June of 2006, C.S. was subsequently examined at Children's Hospital. While giving her history, C.S. relayed three incidents of sexual abuse: one in which Arabie showed her his penis; another when he showed her a Playboy magazine and a pornographic tape of naked adults having sex; and, a final time when Arabie pulled her shorts down, rubbed her private with his hands, licked her private with his mouth, touched and licked her breasts, made her touch his private with her hands, and then tried to put his private on her private. Dr. Adrienne Atzemis ("Dr. Atzemis") conducted a physical exam of C.S. which was normal, testifying that, based on C.S.'s history, she did not expect to find any physical evidence of sexual abuse. Dr. Atzemis stated that the fact the exam was normal neither confirmed nor denied sexual abuse.
Shortly thereafter, C.S. was interviewed at the Child Advocacy Center. A videotape of the interview was played for the jury at trial. During the interview, C.S. described several sexual encounters with Arabie that occurred when she was nine or ten years old. She stated that in the first incident Arabie showed her his private while she was watching television. She explained he "pulled it out" of his pants, then put it back in, and told C.S. not to tell anyone. C.S. stated that, a few nights later, he pulled down her shorts and underwear, touched and licked her breasts, and touched and licked the inside and outside of her "private part." C.S. pointed to her vagina when asked what she meant by her "private part." She also stated Arabie tried to put his private on her private but she pushed him away. In another incident, C.S. stated Arabie showed her a Playboy magazine and video of naked adults having sex. She had told her mother about this last incident, but when Melissa couldn't find the magazine, she acted as though she didn't believe C.S.
C.S. testified at trial and stated that she told the truth during her interview at the Child Advocacy Center and to the examining doctor at Children's Hospital and identified Arabie as the person who committed the acts. She stated that she was afraid of Arabie, that he was "kind of crazy," and that she didn't know what he would do to her if she told.
On appeal, Arabie argues that the evidence was insufficient to prove that an aggravated rape occurred. He does not challenge the sufficiency of the evidence as it pertains to the other convictions. Specifically, Arabie contends there was no evidence of penetration and maintains the evidence only showed that he licked the victim and touched her, which is insufficient to show penetration.
*140 Aggravated rape is defined, in pertinent part, as a rape committed where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because the victim is under the age of thirteen years. LSA-R.S. 14:42(A)(4). LSA-R.S. 14:41(A) defines rape as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." The statute further states that "oral sexual intercourse" is defined as
[T]he intentional engaging in any of the following acts with another person:
(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
LSA-R.S. 14:41(C).
Unlike vaginal or anal intercourse, oral sexual intercourse does not require penetration. Thus, Arabie's argument that the evidence was insufficient to convict him because there was no evidence of penetration is misplaced. The record clearly supports Arabie's conviction for aggravated rape based on oral sexual intercourse. With sexual offenses, the victim's testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense.[1] Thus, viewing the evidence in a light most favorable to the prosecution as required by Jackson v. Virginia[2], we find that the State proved the essential elements of aggravated rape beyond a reasonable doubt.
Arabie also asserts the trial court erred in denying his motion for a mistrial based on an absent defense witness, Detective Florida Bradstreet ("Detective Bradstreet"), for whom he had requested an instanter subpoena. He contends Detective Bradstreet's testimony was crucial to his defense because there were inconsistencies between Detective Bradstreet's report and the victim's trial testimony. On appeal, Arabie argues he was deprived of his right to present a defense when the trial court refused to grant a continuance, and its subsequent denial of his motion for mistrial, due to the witness' absence.
After the State rested, a bench conference was held at which time defense counsel advised the trial court that all defense witnesses had left after deciding they would no longer testify on Arabie's behalf. Defense counsel stated that the only other witness she had to offer was Detective Bradstreet, for whom she had filed an instanter subpoena the day before trial began. Counsel explained that because the trial judge's clerk did not receive the instanter subpoena request until the day trial began, the subpoena was never issued. The record shows that the instanter subpoena request was filed on Monday, April 30, 2007. Jury selection began on Tuesday, May 1, and the State rested on Wednesday, May 2. Defense counsel further explained she initially did not believe she needed to subpoena Detective Bradstreet because she was on the State's witness list and that she needed to call Detective Bradstreet because of an inconsistency between her report and the victim's trial testimony. Specifically, counsel stated that Detective Bradstreet's report indicated the alleged sexual abuse occurred downstairs as opposed to upstairs as the victim testified.
When the State agreed to a stipulation to that effect, defense counsel requested *141 time to obtain the detective's appearance at trial, stating that she wished to cross-examine Detective Bradstreet about the report and go into further detail "because the accounts are different and conflicting, and her report does note there were inconsistent statements given by the victim." The motion was denied by the trial court. Thereafter, the defense moved for a mistrial on the basis that the trial court denied Arabie's request to hold open the proceedings to allow him the opportunity to procure Detective Bradstreet's appearance at trial and that the trial court erred in failing to issue the subpoena. The trial court denied the mistrial. On appeal, Arabie acknowledges an absent witness is not a listed ground for a mistrial under LSA-C.Cr.P. art. 775, but rather maintains it created a "legal defect," as provided in subsection (3), because he was denied his constitutional right to present a defense as the absent witness was critical to his defense. This Court has previously found the mistrial statute does not apply to an absent witness when the defendant was unable to state specifically what the witnesses would testify that would assist the defense.[3] In the present case, although Arabie asserted Detective Bradstreet's report contained some inconsistencies, he failed to specify how he was prejudiced. The State offered a stipulation as to the discrepancy of where the abuse occurred, and this information was presented to the jury through the victim's taped interview. Thus, Detective Bradstreet's testimony regarding where the abuse allegedly occurred would have been cumulative[4], and Arabie has not shown a legal defect.
Under LSA-C.Cr.P. art. 708, a continuance is not permitted after a trial has commenced. Rather, the appropriate procedure is to move for a recess. LSC.Cr.P. art. 709 governs the basis for a motion to continue due to the absence of a witness. We construe Arabie's request for time to secure Detective Bradstreet's appearance as equivalent to a motion for recess. A motion for recess is evaluated by the same standards as a motion for a continuance.[5] The decision to grant a recess lies within the discretion of the trial court and will not be overturned absent an abuse of that discretion.
A criminal defendant is constitutionally guaranteed the right to compulsory process and to present a defense. A defendant's right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served.[6] However, a defendant's inability to obtain service of a requested subpoena is not an automatic ground for reversal. He must show prejudicial error, demonstrating that the witness's testimony would be favorable to the defense and the results of the trial would possibly be different if the witness were to testify.[7]
*142 In order for a defendant to be entitled to a continuance or recess to secure the presence of a witness, he must show (1) the facts to which the absent witness is expected to testify and the materiality thereof, (2) the probability that the witness will be available at the time to which the trial is deferred, and (3) due diligence in attempting to procure the witness for the trial.[8] The requirements of this article are strictly enforced by the courts.[9]
On review, we find that Arabie failed to use due diligence in securing the witness. The April trial was set on January 22, 2007, then twice re-set at the request of defense counsel. The only subpoena request for Detective Bradstreet was filed mid-day on April 30. Arabie had sufficient time before trial within which to subpoena Detective Bradstreet and should have determined prior to trial whether the officer had been properly served.[10] Further, as found above, Arabie failed to show the materiality of the detective's proposed testimony. This assignment of error is without merit.
Next, Arabie argues his life sentence for aggravated rape is unconstitutionally excessive. He maintains the trial court failed to consider the circumstances of the case before imposing the mandatory life sentence. Arabie further asserts the statutorily mandated life sentence fails to distinguish rapists from murderers and contends that a child could be raped in numerous ways that are far more heinous than the present case.
Arabie's life sentence for aggravated rape is statutorily mandated unless the State decides to seek the death penalty under LSA-R.S. 14:42(D)(2)(a). LSA-R.S. 14:42(D)(2)(b). The mandatory life sentence for aggravated rape is a not a violation of the prohibition against excessive punishment.[11] Nevertheless, sentence review under the Dorthey[12] guidelines is not restricted to habitual offender sentences.[13] A court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality[14] and such downward departures should only occur in rare cases.[15] A defendant has the burden to rebut the presumption of constitutionality by showing by clear and convincing evidence that he is exceptional, namely that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case.[16] A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
*143 Here, Arabie did not urge a downward deviation at the time of sentencing. In his motion to reconsider sentence, he simply asserted his sentence was unconstitutionally excessive. At no time has Arabie argued or presented any evidence showing any exceptional circumstances to justify a downward departure from the mandatory life sentence. He has failed to carry his burden of proof that his life sentence for aggravated rape is unconstitutionally excessive. This assignment of error is without merit.
We have reviewed the record for errors patent and note the following:
The record does not reflect that Arabie was notified of the sex offender registration requirements as required by statute. LSA-R.S. 15:540, et seq. requires registration of sex offenders and LSA-R.S. 15:543(A) requires the trial judge to provide written notification of the registration requirement to the defendant. Although Arabie received a life sentence, we have determined to remand the matter to the trial court for compliance with these requirements. The trial court is further instructed to provide notice under both the general sex offender and child predator registration provisions.[17]
The trial court also failed to comply with LSA-R.S. 14:78.1(E), which requires the court to order Arabie to pay, if able, the victim's reasonable costs of counseling that result from the offense. Although the statute requires the trial court to determine defendant's ability to pay based on his financial resources and future ability to pay, the record does not show that such a determination was made. On remand, the court is instructed to comply with this portion of the statute.[18]
Finally, the commitment correctly indicates that Arabie was found guilty by a jury on all three counts, but it also contains a notation that a plea was entered, that Arabie was advised of and waived his rights, and that a waiver of rights form was executed and filed into the record. The erroneous notation pertaining to the guilty plea appears to be inadvertent. The trial court is ordered to correct the commitment to ensure an accurate record and prevent any confusion that may result from the error.
For the foregoing reasons, Arabie's conviction and sentence are affirmed. The matter is remanded with instructions.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Singleton, 05-622, p. 5 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 650.
[2] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[3] See, State v. Johnson, 03-620 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 186, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849.
[4] See, State v. Addison, 00-1730 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 616, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549 and State v. Luna, 00-858 (La.App. 5 Cir. 10/31/00), 772 So.2d 249, 256-57, writ denied, 00-3244 (La.10/12/01), 799 So.2d 495.
[5] State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 117, writ denied, 03-0482 (La.5/30/03), 845 So.2d 1061, cert. denied, 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 321 (2003).
[6] State v. Rodriguez, supra.
[7] State v. Campbell, 99-892 (La.App. 4 Cir. 1/3/01), 778 So.2d 636, 644, writ granted in part, judgment vacated in part, on other grounds, 01-0329 (La. 11/2/01), 799 So.2d 1136.
[8] See, LSA-C.Cr.P. art. 709; State v. Addison, supra.
[9] State v. White, 472 So.2d 128, 130 (La.App. 5 Cir. 1985); State v. Stevenson, 02-0079 (La. App. 5 Cir. 4/30/02), 817 So.2d 343.
[10] See, e.g., State v. Garcia, 541 So.2d 231, 232 (La.App. 4 Cir.1989).
[11] See, State v. Talbert, 416 So.2d 97, 102 (La. 1982) and State v. Lewis, 98-672 (La.App. 5 Cir. 3/10/99), 732 So.2d 556, 560, writ denied, 99-2818 (La.4/20/00), 760 So.2d 334.
[12] State v. Dorthey, 623 So.2d 1276, 1280 (La.1993).
[13] State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274, 1275 (per curiam).
[14] State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672.
[15] State v. Berniard, 03-484 (La.App. 5 Cir. 10/15/03), 860 So.2d 66, writ denied, 03-3210 (La.3/26/04), 871 So.2d 345.
[16] Id. (citing State v. Johnson, 709 So.2d at 676).
[17] See, LSA-R.S. 15:541(3); LSA-R.S. 15:542.1. See also, State v. Morgan, 06-529 (La.App. 5 Cir. 12/12/06), 948 So.2d 199.
[18] See, State v. Bolden, 04-1000 (La.App. 5 Cir. 3/1/05), 901 So.2d 445, 450, writ denied, 05-2030 (La.4/28/06), 927 So.2d 279; State v. Morgan, supra.