WALTER J. ROTHSCHILD, Judge.
[2Rodney J. Shannon was charged by bill of information with driving while intoxicated, third offense, in violation of LSA-R.S. 14:98(A)(D) and pled not guilty at arraignment. Defendant filed a Motion to Quash, which was denied by the court, and trial was set for October 26, 2009.
Although defendant was represented by counsel, he subsequently filed several pro se motions. On September 29, 2009, defendant filed a Motion to Dismiss All Charges Based on Evidence Tampering. On October 9, 2009, defendant filed a Motion to Remove All Hearsay Statements as Evidence, a Motion to Suppress Evidence, and a Motion to Allow Electronic Equipment. At the motion hearing on October 15, 2009, the trial court noted that, despite defendant’s representation by counsel and despite counsel’s recommendations to defendant, defendant elected to file motions on his own. As a result, defense counsel expressed to the court his intention to withdraw as attorney of record.
13After allowing defendant and his counsel time to converse, and advising defendant of the potential pitfalls of proceeding without counsel, the trial court inquired whether defendant would go forward with or withdraw his pro se motions. Defendant withdrew the motions, and the court continued all other outstanding motions to the October 26, 2009 trial date. Defendant’s Motion to Allow Electronic Equipment was denied.
On October 27, 2009, the morning of trial, defendant re-filed his pro se motions. Due to what it considered to be defendant’s inability to cooperate with defense counsel, the trial court granted defense counsel’s motion to withdraw, allowed defendant to represent himself, and ordered defense counsel to sit through the proceedings and serve as “ghost counsel.” In addition to his pro se motions, defendant also filed a motion to transfer the case to another division. The trial judge declined to recuse himself and ordered that the case be transferred to another division for a determination on the motion pursuant to LSA-C.Cr.P. art. 675. Defendant’s motion was subsequently denied, and the matter was transferred back to the original trial judge.
The court then addressed defendant’s Motion to Remove All Hearsay Statements as Evidence and Motion to Suppress Evidence, which were both denied. The court then asked if the parties were ready to proceed to trial, to which defendant responded “[n]ot exactly, Your Honor. I mean I just started representing myself today.” Noting that the case was over a year old, the court indicted that it would go forward.
Prior to calling the jury, the State requested that defendant be fingerprinted and defendant objected, stating that he would stipulate to the two predicate DWI offenses. Defendant again advised the court that he needed more time to prepare and orally moved for a continuance of the trial, which the court denied.
14Defendant ultimately proceeded to trial before a six-person jury. The jury found defendant guilty of operating a motor vehicle while intoxicated, third offense. On November 9, 2009, defendant was sentenced to 5 years imprisonment at hard labor in the Department of Corrections, with credit for time served, to run concurrently with his sentence in case number 08-2993. The court suspended four years of the sentence, and imposed several special conditions.
*711 After sentencing, defendant filed a Request for Minimal Sentence with No Bail and House Arrest, which was denied by the court on December 16, 2009. Defendant also filed a Motion for Re-Trial and a Motion for Post Verdict Judgment of Acquittal, which were both denied the same day. Defendant filed a written motion for appeal, which was granted on December 16, 2009.

FACTS

On April 26, 2008, Trooper First Class Ralph Onstad, of the Louisiana State Police, Troop B, was on patrol in Jefferson Parish when he observed defendant’s vehicle stopped in a median opening on Clear-view Parkway and King Street in Metairie, Louisiana. Because the vehicle did not have its headlights on, Trooper Onstad turned around to determine if the vehicle was abandoned or if someone had broken down. As Trooper Onstad approached, the driver turned on his hazard lights and began to pull away. Trooper Onstad turned on his blue lights, which activated the vehicle camera, and attempted to initiate a stop.
Defendant continued to drive, passing several parking lots, swerved prior to making a right turn on Ligustrum, and finally stopped on the eastbound side of the road, facing west. Trooper Onstad ran a search of defendant’s license plate on his computer system and subsequently discovered that the vehicle was not registered to defendant. Trooper Onstad then instructed defendant to step to the rear of the | avehicle but defendant failed to comply. As Trooper Onstad approached defendant, he observed that defendant appeared very unsteady on his feet. Trooper Onstad thought defendant might fall down and he asked defendant to sit on the bumper of his vehicle. Defendant smelled of alcohol, his eyes were very bloodshot, and he was very “wobbly”. According to Trooper On-stad’s testimony, defendant was uncooperative, and “wasn’t doing anything I told him to do, at all, basic things; you know, stand still, face this way, sit here. I mean he wasn’t doing anything.” Trooper On-stad further stated that when he interacted with defendant, defendant indicated “yes” and “no” with nods of his head and indicated that he could hear Trooper On-stad but could not speak.
Trooper Onstad testified that, based on his training and experience, he recognized these characteristics as signs of alcohol, medication or drug impairment. Trooper Onstad further testified that, based on the smell alone, he knew that defendant had been drinking alcohol.
Trooper Onstad attempted to speak with the passenger sitting in defendant’s vehicle, Ms. Williams, to ascertain whether defendant was deaf or had some other problem which prevented him from speaking. Trooper Onstad observed numerous beer bottle caps and a six-pack of beer on the floorboard of the vehicle. Trooper On-stad then attempted to conduct a Field Sobriety Test. Because of the manner in which defendant was acting, Trooper On-stad did not feel safe performing the Field Sobriety Test himself, so he placed a call on his radio for trooper assistance. Trooper Wolfe and Trooper Flynn responded to the scene to provide backup, but did not participate in the traffic stop or subsequent arrest.
Trooper Onstad testified that he then attempted to conduct the Field Sobriety Test. He stated he gave defendant the instructions, and defendant “wouldn’t stand still, he wouldn’t face the vehicle, he kept putting his hands in his pockets, which 1 fiis a major officer’s safety hazard.” Trooper Onstad stated he also observed that defendant “kept fooling with his belt as if he was going to take his pants off,” and that “[h]e was just doing all kinds of *712 abnormal things.” When it became obvious that defendant was not going to cooperate, Trooper Onstad placed him under arrest. Defendant was transported to Jefferson Parish jail and his vehicle was towed.
Trooper Onstad stated he read defendant his rights relating to the breath test, but defendant continued to refuse to speak or communicate. Trooper Onstad set up the Intoxilyzer, and as he began entering defendant’s information, defendant suddenly spoke. Defendant advised Trooper Onstad that he would take a breath test after speaking with his attorney. Trooper Onstad offered to contact defendant’s attorney, and defendant provided him with two names, “Mr. Cazalot” and “Mr. Fourth and Derbigny.” Trooper Onstad accessed the internet from the jailhouse computer to attempt to locate an attorney who used either of those names, but was unsuccessful. Trooper Onstad continued to set up the Intoxilyzer but defendant refused to take the breath test. When Trooper On-stad asked defendant to sign one of the required forms, defendant wrote on the signature line “burp, did not.” At that point, Trooper Onstad acknowledged that defendant refused to sign the documents properly, wrote “refused” on the documents, proceeded to let the machine run through the required cycle, and continued with the booking process.
While at the jail, Trooper Onstad also offered defendant another opportunity to take the Field Sobriety Test, but defendant refused. Trooper Onstad reviewed defendant’s current history printout and noted one prior conviction for driving while intoxicated and “a second one they referred to as a DWI 894.” Defendant was charged with driving while intoxicated, second offense, in violation of LSA-[R.S.7 14:98, driving with no headlights in violation of LSA-R.S. 32:303, and improper stopping in violation of LSA-R.S. 32:141.
Defendant’s daughter, Racquel Car-mouche, was the only defense witness to testify at trial. Ms. Carmouche testified that when she and her father had gone to pick up the vehicle defendant was driving, it would not start. On cross-examination, Ms. Carmouche testified she was not in the car with her father the night he was arrested.

DISCUSSION

By his first assignment of error, defendant contends that the failure of the trial court to grant a continuance was an abuse of discretion and that he was prejudiced by the ruling. Specifically, defendant asserts that although he had “ghost counsel” throughout the trial, he was unprepared to represent himself and had arranged with another attorney to represent him if a continuance was granted. He contends that had he been able to consult with an attorney, he would have known that he was required to lay a foundation for his proffered evidence and would have been able to call witnesses to testify regarding the evidence. Defendant argues that the fairness of the entire proceeding was put in doubt by the court’s failure to allow him time to retain another attorney, and that “it was extremely important for [him] to be given a continuance to have these witnesses appear at trial.” Finally, defendant notes that, though LSA-C.Cr.P. art. 712 requires that a motion for continuance be in writing, an exception to this requirement exists where circumstances producing the motion for continuance occur unexpectedly and defense counsel has no opportunity to prepare a written motion. Defendant asserts that, given the unexpected granting of defense counsel’s motion to withdraw, the oral motion for a continuance should have been granted.
*713 | sThe State responds that, because a motion for continuance must be in writing and filed at least seven days prior to trial, defendant’s claim lacks merit. The State also contends that this continuance, if granted, would have constituted defendant’s eleventh continuance. Moreover, the State asserts that the time afforded to defendant to prepare for trial was not so minimal as to undermine the fairness of the proceedings and that defendant has failed to show specific prejudice resulting from the trial court’s denial of the motion. The State concludes that defendant has failed to show that the trial court abused its discretion to deny defendant’s motion for continuance.
On the morning of trial, due to defendant’s inability to cooperate with defense counsel, the trial court granted defense counsel’s motion to withdraw, allowed defendant to represent himself, and ordered defense counsel to sit through the proceedings and serve as “ghost counsel.” When the court inquired as to whether defendant was ready to proceed to trial, defendant responded “[n]ot exactly, Your Honor. I mean I just started representing myself today. And I didn’t have time to subpoena documents. There are quite a bit of documents I need to subpoena from the State as well as Trooper Onstad and the Department of Public Safety that has not been turned over by Mr. Sauviac, or he didn’t have it.” When the court indicated its intention to proceed, the following exchange occurred:
Defendant: Excuse me. Your Hon- or, again I’m going to state with respect to the Court that I haven’t had much time to prepare. Mr. Sauviac just got off the case this morning. And I need more time to prepare for this case. I’m not at all ready.
The Court: Mr. Shannon, let me say this to you, sir. Your case is better than . a year old. I have repeatedly continued your case at your request time and time again, most recently as last month when your case came up for motion hearing. I thought we had these issues resolved. You were at odds with your attorney. You, again, this week, are at odds with your attorney. And, please, I am trying to put it in as simple of terms as possible. If I allowed every defendant to cause issues with their attorney on the eve of trial, and that would automatically | ^continue the case, then this Court would get nothing done. Your case was set in stone. I remember telling you that time and time again. Today is the date of trial, and it’s only because of what you have done with regard to your own counsel. And, despite that, I have ordered, and I want the record to reflect, that Mr. Sauviac is still in the courtroom, and he is your ghost counsel. So, he is there to help you throughout this process. End of story.
Defendant: I asked Mr. Sauviac several questions, and I mean he couldn’t give me an answer, actually, on certain things. Again, for the Record, I’ve just received this case in its entirety on my own. And let the Record reflect that I am not ready to continue with this trial. A seasoned veteran wouldn’t be able to take this case right on. A seasoned veteran, he would have to have time to look at the case. And me and Mr. Sau-viac was trying, trying to come to some sort of an agreement, and it just didn’t happen. So, therefore I’d like to — •
The Court: And it’s not an agreement with regard to representation, it was an agreement with regard to how you wish to progress with your case. You paid Mr. Sauviac. That’s what you told me. The sole issue today is because you choose to go down a different path than what he has advised you to. He *714 was prepared and he was ready to try your case.
[[Image here]]
Defendant: I need certain documents in order to present a fair trial for myself. And today is just — a couple of hours is not enough time to properly prepare.
The Court: If that’s a motion to continue, I want the Record to be abundantly clear this case was reset, it’s over a year old. It’s over a year old. I’ve (sic) have continually pushed back your cáse at your request. I made it abundantly clear today was your date of trial. And only because you have chosen to be at odds with your attorney are you in the position that you’re in today. This is something that you caused, Mr. Shannon, no one else.
Your motion to continue, if that’s what it is, is denied.
Bring the jury in.
Defendant then advised the court that he “was supposed to have another attorney coming down also.” In an effort to resolve the issue, the court contacted the attorney on defendant’s behalf. The attorney informed the court that he would not be representing defendant at the trial and that he had advised defendant that he would only represent him if the case was continued. The court then proceeded to bring in the jury.
According to LSA-C.Cr.P. art. 707: |inA motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial. Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
Nevertheless, there is a jurisprudential exception to the requirement for a written motion where the circumstances producing the motion occur unexpectedly and there is no opportunity to prepare the motion. State v. Bartley, 03-1382, p. 4 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, 567, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006 (citing State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 68, writ denied, 98-264 (La.6/19/98), 719 So.2d 481)(holding that defendant had not preserved the denial of his oral motion for continuance because no unexpected circumstances arose to prevent the filing of the written motion)(citing State v. Malinda, 95-292 (La.App. 5 Cir. 10/31/95), 663 So.2d 882, 886 (where this Court held that defendant should have filed a written motion but reviewed the denial of the motion to continue in an abundance of caution)).
In the present case, there is no evidence in the record that a written motion for continuance was filed or that an oral motion was made seven days in advance of trial. Given that defendant had ongoing issues with defense counsel, who had filed a motion to withdraw almost two weeks prior to the trial date, and that defendant had already contacted another attorney, we do not find that the circumstances producing defendant’s motion occurred unexpectedly. As such, there was arguably time to prepare the motion prior to the day of trial. On that basis, we find that defendant has not preserved the issue for appeal. Nevertheless, we will address the merits of defendant’s claim. See State v. McGee, 04-963, p. 16 (La.App. 5 Cir. 1/11/05), 894 So.2d 398, 409-10, writ denied, 05-0593 (La.5/20/05), 902 So.2d 1050; Bartley, 871 So.2d at 567.
According to LSA-C.Cr.P. art. 712, “[a] motion for continuance, if timely *715 filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” The Louisiana Supreme Court has consistently held that the decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. State v. Davenport, 08-463, p. 3-4 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 447, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473 (citing State v. Manning, 03-1982, p. 30 (La.10/19/04), 885 So.2d 1044, 1077, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005)). In addition, the Louisiana Supreme Court generally declines to reverse convictions even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. Id. at 3-4, 2 So.3d at 447. This Court has also recognized that the denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. Davenport, 08-463 at 4, 2 So.3d at 447 (citing Bartley, 03-1382 at 5, 871 So.2d at 567).

Continuance to retain new counsel

It is well settled that a defendant in a criminal trial cannot, by a last minute change of counsel, force a postponement. State v. Williams, 00-1850, p. 4 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 790-91, writ denied, 01-1432 (La.4/12/02), 812 So.2d 666. In State v. Divine, 98-812, pp. 3-5 (La.App. 5 Cir. 5/19/99), 738 So.2d 614, 616-17, writ denied, 99-2393 (La.2/4/00), 754 So.2d 222, cert. denied, 530 U.S. 1219, 120 S.Ct. 2227, 147 L.Ed.2d 258 (2000), defense counsel orally moved for a continuance on the day of trial, saying that the defendant had told him |12he had hired another lawyer to represent him. The trial court denied the motion, stating that there was a two-month period from the date of arraignment to trial for defendant to retain new counsel or handle any other matters he felt appropriate. Id. at 3, 738 So.2d at 616. This Court could not say the trial court erred in denying the motion. Id. at 5, 738 So.2d at 617.
In the present case, we find no abuse of the trial court’s discretion in denying defendant’s motion to continue to afford time for defendant to retain new counsel. As recognized by the trial court defendant had ample time to substitute counsel, if he chose to, prior to the commencement of trial. The bill of information in this case was filed on June 5, 2008. Defendant was arraigned on July 11, 2008. Defendant was represented by Alex Lambert at the hearings on October 7, 2008, November 5, 2008 and November 6, 2008. Defendant’s retained counsel, Donald Sau-viac, first appeared on defendant’s behalf on December 8, 2008, for a motion hearing that was ultimately continued to January 5, 2009, at defendant’s request. The January 5, 2009 motion hearing was continued, at defendant’s request, to February 9, 2009, and trial was set for March 2, 2009. On February 9, 2009, defendant requested another continuance, and the motion hearing was re-set for February 11, 2009. On February 11, 2009, defendant’s motion to quash was denied, and defendant requested a stay in order to seek writs with this Court.
After writs were denied by this Court and the Louisiana Supreme Court, the parties appeared at a hearing on June 1, 2009. Defendant requested a continuance, and the hearing was continued to September 1, 2009. On September 1, 2009, the court set a trial date of October 26, 2009, and re-set the motion hearing date for October 15, 2009. On October 15, 2009, the court noted that defendant had filed several pro se motions against the advice of his counsel and that defense counsel had moved to *716 withdraw. The court gave defendant and his counsel some time to |1sresolve their differences, and defendant decided to withdraw his pro se motions and go forward with Mr. Sauviac. At the end of the hearing, the court advised defendant that trial would commence, as scheduled, on October 26, 2009.
Nearly two weeks later, on the morning of trial, defendant re-filed his pro se motions, and the court inquired whether defendant intended to represent himself. Noting that defendant and defense counsel had come to an impasse, the court granted defense counsel’s motion to withdraw but ordered that defense counsel sit through the case and serve as ghost counsel. Defendant orally moved for a continuance, and proceeded to trial after his motion for continuance was denied.
“There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases.” State v. Leggett, 363 So.2d 434, 436 (La.1978). We fail to find that the trial court abused its discretion in denying defendant’s motion to continue because the case had been pending for over a year, the trial had already been continued and the new date had been re-set for nearly two months, and defendant had ongoing issues with counsel and could have retained new counsel well in advance of the trial date. Moreover, defendant had defense counsel present during the trial as “ghost counsel.” There is no indication that defense counsel, who was ready to proceed to trial, had any intention of issuing subpoenas for additional witnesses or documents. Thus, defendant should have had the benefit at trial of the same materials and/or witnesses available to defense counsel. As such, we find that defendant has not shown any prejudice in the denial of the motion.

Continuance to obtain witnesses

A criminal defendant is constitutionally guaranteed the right to compulsory process and to present a defense. State v. Arabie, 07-806, p. 8 (La.App. 5 Cir. 1143/11/08), 982 So.2d 136, 141, writ denied, 08-0928 (La.11/21/08), 996 So.2d 1104. A defendant’s right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. Id. However, a defendant’s inability to obtain service of a requested subpoena is not an automatic ground for reversal. Id. He must show prejudicial error, demonstrating that the witness’s testimony would be favorable to the defense and the trial results would possibly be different if the witness testified. Id.
According to LSA-C.Cr.P. art 709,[1] a motion for a continuance based upon the absence of a witness must state the following:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
The requirements of article 709 are strictly enforced by the courts. Ara- *717 bie, 982 So.2d at 142. In State v. Meyers, 95-750, 96-35, 96-895, pp. 21-23 (La.App. 5 Cir. 11/26/96), 683 So.2d 1378, 1388-89, writs denied, 97-0015 (La.5/9/97), 693 So.2d 766, 98-2530 (La.2/5/99), 737 So.2d 745, 00-0995 (La.12/8/00), 775 So.2d 1079, this Court found no abuse of the trial court’s discretion in denying defendant’s motion for a continuance on the basis of absent witnesses, whose testimony the defense claimed was exculpatory, where defendant failed to meet two of the three requirements of LSA-C.Cr.P. art. 709.
In the present case, we find that defendant did not satisfy the requirements of LSA-C.Cr.P. art. 709. On appeal, defendant argues that had he been able to consult with an attorney he “would have known that he had to lay a foundation for 11f-,his proffered evidence and provide the proper witnesses.” Defendant further contends that “[i]f these witnesses had been called, they could have testified that the car needed repairs because it stalled, Mr. Shannon had bloodshot eyes due to allergies, and if someone else had taken the video, that person could have laid a foundation.” Thus, defendant concludes that “it was extremely important for the defendant to be given a continuance to have these witnesses appear at trial.”
However, defendant’s motion for continuance was not based on an absence of witnesses. At the time he requested the continuance, defendant did not mention potential witnesses or request that he be permitted to call other witnesses. Though he now argues that the person who performed the repairs on his car and the person who filled his allergy prescription “would have added much needed substance to [his] claim that he was not guilty,” defendant has failed to set forth any facts to which these absent witness would be expected to testify that would show the materiality of the testimony and the necessity for the presence of these witnesses at the trial.
Further, defendant said nothing of the facts and circumstances showing a probability that the witnesses would be available at the time to which the trial would be deferred. He also said nothing to show that he or defense counsel used due diligence in an effort to secure the attendance of any of these potential witnesses. As reflected in the record, defendant did not even disclose the names of potential witnesses who might testify on his behalf.
As such, we find no abuse of the trial court’s discretion in denying defendant’s motion to continue. Further, as discussed above, defendant has failed to show specific prejudice.
This assignment of error is without merit.
| ^Defendant next contends that the trial court improperly denied his Batson challenges. Specifically, defendant asserts that the State exercised peremptory challenges to excuse two black jurors and that the prosecutor’s “racially neutral reasons” for excusing these jurors were a sham. As such, defendant argues that a pattern of discrimination was established, constituting reversible error.
The State responds that, although defendant did not satisfy his burden of establishing a prima facie case of discrimination, the judge required that the State provide race neutral reasons for excusing the two jurors. Additionally, the State asserts that, in response to the defendant’s Batson objections, it offered valid, race-neutral reasons for striking both jurors. As such, the State contends that the trial court properly overruled the objections.
The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination on the basis of race in the exercise of peremptory chai- *718 lenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Batson decision is codified in LSA-C.Cr.P. art. 795(C).[2] In Batson, the United States Supreme Court established a three-step analysis to be applied when addressing a claim that peremptory challenges of a prospective juror were based on race. State v. Cheatteam, 07-272, p. 7 (La.App. 5 Cir. 5/27/08), 986 So.2d 738, 743 (citing Batson, supra).
First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised his or her peremptory challenges to exclude potential jurors on the basis of race. Cheatteam, 07-272 at 7, 986 So.2d at 117743 (citing Batson, 476 U.S. at 96-7, 106 S.Ct. at 1723). Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Id. (citing Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723-24). This second step “does not demand an explanation that is persuasive or even plausible;” as long as the reason is not inherently discriminatory, it suffices. Id. (citing Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam)). Third, the court must then determine whether the defendant has established purposeful discrimination. Cheatteam, 07-272 at 7, 986 So.2d at 743 (citing Batson, 476 U.S. at 98, 106 S.Ct. at 1724). It is at this third step that implausible explanations offered by the prosecution “may (and probably will) be found to be pretexts for purposeful discrimination.” Id. at 7-8, 986 So.2d at 743 (citing Purkett v. Elem, 514 U.S. at 768, 115 S.Ct. at 1771). “On appeal, a trial court’s ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous.” Id. at 8, 986 So.2d at 743 (citing Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008) (citing Hernandez v. New York, 500 U.S. 352, 369, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991))).
The Supreme Court subsequently affirmed and applied the three-part Batson test in Miller-El v. Dretke, 545 U.S. 231, 239, 125 S.Ct. 2317, 2324, 162 L.Ed.2d 196 (2005), and, most recently, in Snyder v. Louisiana, supra. Cheatteam, 07-272 at 8, 986 So.2d at 743. In Miller-El, the Supreme Court emphasized the trial judge’s responsibility to assess the plausibility of the prosecutor’s proffered race-neutral reason “in light of all evidence with a bearing on it.” Id. at 8, 986 So.2d at 743-44 (citing Miller-El, 545 U.S. at 252, 125 S.Ct. at 2331). The Supreme Court further stated:
A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual | ^significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.
Id. at 8, 986 So.2d at 744 (citing Miller-El, 545 U.S. at 252,125 S.Ct. at 2332).
In Snyder, the Supreme Court again emphasized that the plausibility of the prosecutor’s explanation for a peremptory *719 strike is to be carefully scrutinized by the trial judge under the third step of the Batson inquiry, and noted that implausible reasons will fail a Batson challenge. Cheatteam, 07-272 at 8, 986 So.2d at 744. The Supreme Court further noted that “[t]he trial court has a pivotal role in evaluating Batson claims,” and that, “in the absence of exceptional circumstances, we would defer to [the trial court].” Snyder, 552 U.S. at 477, 128 S.Ct. at 1208 (citing Hernandez, 500 U.S. at 366, 111 S.Ct. at 1859). Pursuant to Snyder, step three of the Batson inquiry involves an evaluation of the prosecutor’s credibility to determine “not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Cheatteam, 07-272 at 8-9, 986 So.2d at 744 (citing Snyder, 552 U.S. at 477, 128 S.Ct. at 1208).
Citing Miller-El, the Snyder court reiterated that, in considering a Batson objection, “all of the circumstances that bear upon the issue of racial animosity must be consulted.” Snyder, 552 U.S. at 478, 128 S.Ct. at 1208. If the record does not support the prosecutor’s proffered explanation or if it evidences that the proffered explanation is implausible, “there is an inference of discriminatory intent that sufficiently demonstrates a Batson violation.” Cheatteam, 07-272 at 9, 986 So.2d at 744 (citing Snyder, 552 U.S. at 485, 128 S.Ct. at 1212).
The defendant in the instant case is an African American. Of the twenty-eight jurors called in the present case, thirteen were white females, ten were white males, and five were black females. In the selection of the six-member jury panel |19in this case, the record shows that defendant exercised six peremptory challenges, all against white males. The record shows that the State also exercised six peremptory challenges. Two of the six of the State’s peremptory challenges were against potential jurors who were African American: Debra Thirsty and Leslie Harris. The jury was ultimately comprised of three white females, two white males, and an African-American female.
The State’s first peremptory challenge was exercised against Ms. Amber Archen-brenner, a white female. The State’s second peremptory challenge was exercised against Mr. William Pinkston, a white male. The State’s third peremptory challenge was exercised against Janice Hamilton, a white female. The State did not give reasons for striking these jurors.
The State’s fourth and fifth peremptory challenges were exercised against two African American females: Ms. Debra Thirsty and Ms. Leslie Harris. Defendant lodged a Batson challenge, indicating that both Thirsty and Harris were African Americans, and requested that the State give a race-neutral reason for the strikes.[3] The State provided the following explanation for exercising a peremptory challenge against Ms. Thirsty:
*720 Well, originally, she said she couldn’t follow the law, and then she said she could follow the law. She did it very reluctantly. She was very reluctant to follow the law,. initially. This is not a State favorable,witness in terms of viewing the evidence.
Defendant objected to the State’s reasoning, arguing that the State was “eliminating all African-American people, and I think this is purely race baiting.” 12nThe trial judge recognized that Thirsty had given conflicting answers, and overruled defendant’s objection, stating:
I’ve listened to your argument. All right? She gave conflicting answers, her demeanor, she was not very forthcoming. She was very quick to respond that she could not follow the law and at times appeared to the Court to be disengaged from the process. While, admittedly, when called up she changed her statement later in voir dire and said it was because of a misunderstanding, I do find that the excuses given by the State are racially neutral. Because there is a basis for fact that she failed to follow the scheme of the law as explained, she vacillated on her answer. So, your objection is overruled.
With regard to Ms. Harris, who was employed as a secretary for an attorney named Chip Forstall, the State offered the following explanation:
Judge, as a defense attorney I litigated forty-three cases against Chip Forstall. I know the office, I’ve been in that office hours and hours and hours. I don’t know if she’s seen me or if she’s not seen me.
[[Image here]]
I mean it’s a plaintiffs attorney firm that I have litigated a ton of cases against. I had one case that involved forty-three different people. I’ve spent many, many hours in that office. I just do not feel comfortable with that. Plus, her answer, she was not — she was not very verbal when I questioned her. I questioned her after I questioned Ms. Thirsty, and she didn’t give that many explanations. And normally I would like with being family members who are Gretna police officers, but her answers were not forthcoming when it came to following the law on .08 until later.
Defendant objected to the State’s explanation, arguing that the Assistant District Attorney had no direct connection with Ms. Harris. The trial judge overruled defendant’s objection stating:
All right. Let me say this. I am familiar, I think as all of us are, the advertisements for Mr. Forstall in the community. I can take judicial notice of that. And he certainly does have a very active practice in litigation and does appeal, based upon his advertisement, to a specific segment of the community. Mr. Milner says that he has had, in fact, cases with the law firm for which she’s employed, and additionally the fact that she was sometimes evasive when it came to responses with regard to following the law.
Your objection is overruled. She’s struck.
laiThe State’s sixth peremptory exception was exercised against Mr. Johnny Norra, a white male. The State did not give a reason for striking this juror.
Applying the three-step analysis established by the United States Supreme Court in Batson, we do not find that the defendant established a prima facie case of discrimination. Thus, we find that the State was not required to provide race-neutral explanations for its peremptory challenges. It is initially noted that, prior to striking Ms. Thirsty, the State had exercised three peremptory challenges, all *721 against white jurors. The record does not indicate that defendant showed any facts or relevant circumstances that raised an inference that the prosecutor was using his or her peremptory challenges to exclude potential jurors on the basis of race. Instead, after the State exercised a peremptory challenge against Ms. Harris, defendant simply asked: “What’s the reasoning? Aren’t there reasoning on these?” Defendant then stated: “That’s the last two African Americans. I mean they basing it purely on race.” Other than observing that the State had stricken two African Americans, defendant failed to allege any other facts tending to show that the State was excluding jurors on the basis of race. Despite defendant’s apparent failure to establish a prima facie case, the court then requested race-neutral reasons from the State.
On appeal, defendant complains that a pattern of discrimination was established and that the prosecutor’s reasons for excusing Ms. Thirsty and Ms. Harris were “a sham.” He alleges that the “only reason the last black juror was accepted by the State was to give weight to its claim that it was only exercising racially neutral reasons for excusing Ms. Thirsty and Ms. Harris, thus showing purposeful discrimination.”
J^gHowever, the tenor of the entire voir dire evidences that the exclusions of the African American jurors was not discriminatory. Prior to excusing Ms. Thirsty and Ms. Harris, the State exercised peremptory challenges against three white jurors. With regard to Ms. Harris, who was employed as a secretary for Chip Forstall, the assistant district attorney advised the court that he had litigated many cases against Mr. Forstall and had been in Mr. Forstall’s office. Because previous association with a District Attorney has been found to be a valid ground for a peremptory challenge of a juror, we find that removal of this juror was justified and race-neutral. State v. Baker, 34,973, p. 13 (La.App. 2 Cir. 9/26/01), 796 So.2d 145, 154 (citing State v. Mamon, 26,337 (La.App. 2 Cir. 12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.6/2/95), 654 So.2d 1104); State v. Thornton, 36,757 (La.App. 2 Cir. 1/29/03), 836 So.2d 1235, 1241, writ denied, 03-0861 (La.10/31/03), 857 So.2d 474 (citing Mamon, supra).
With regard to Ms. Thirsty and Ms. Harris, the assistant district attorney advised the court that both had expressed an inability or unwillingness to follow the law without proof of a .08 on the breath test. The court recognized that Ms. Thirsty had “vacillated on her answer,” and noted that Ms. Harris was “evasive when it came to responses with regard to following the law.” As noted above, the State’s reason for exercising a peremptory challenge will qualify as race-neutral unless a discriminatory intent is inherent in the prosecutor’s explanation. State v. Taylor, 06-558, p. 22 (La.App. 5 Cir. 7/30/07), 966 So.2d 631, 645, writ denied, 07-1902 (La.2/1/08), 976 So.2d 717 (citing State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 956, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005)). In the instant case, we find no discernable discriminatory intent in the State’s explanation. Considering that the trial judges determination pertaining to purposeful Indiscrimination rests largely on credibility evaluations and great deference is given to the trial judge in his determination, we find that the trial court did not err in denying defendants Batson challenges. As noted above, step three of the Batson inquiry involves an evaluation of the prosecutor’s credibility to determine “not only whether the prosecutor’s demeanor belies a discriminatory in *722 tent, but also whether the juror’s demean- or can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Cheatteam, 07-272 at 8-9, 986 So.2d at 744 (citing Snyder, 552 U.S. at 477, 128 S.Ct. at 1208). The trial judge was in the best position to determine the prosecutors sincerity and found no purposeful discrimination. Additionally, the trial judge observed the demeanor of both of the stricken jurors and, in denying defendants Batson challenges, expressly recognized the issues cited by the State in support of its peremptory challenges. Thus, we find that the trial courts determinations are supported by the record.
By his final assignment, defendant contends that a mistrial should have been declared when the prosecutor emphasized that the evidence was uncontroverted because it constituted an indirect reference to defendant’s right to remain silent. Defendant further asserts that the error was not harmless because the trial judge did not have the discretion to deny the motion and because mistrial is mandatory under LSA-C.Cr.P. art. 770(3).
The State responds that the prosecutor’s remarks did not constitute an indirect reference to defendant’s failure to testify at trial but were rather offered as a reminder to the jury that evidence comes from the witness stand and not from the podium. The State further argues that the prosecutor’s remarks were made in rebuttal to defendant’s closing argument, during which defendant improperly offered testimony suggesting that he was tricked by the officer, that the officer | ^acted improperly, and that his bloodshot eyes were the result of allergies. The State notes that LSA-C.Cr.P. art. 770 provides for an admonition of the jury if requested by the defendant, and such an admonition was given in the instant case. Finally, the State argues that any error would be subject to a harmless error analysis and that there was overwhelming evidence of defendant’s guilt.
During his closing argument rebuttal, the assistant district attorney stated:
Now you’re going to hear several instructions at the end by the Judge. And these instructions are going to basically tell you how you’re supposed to decide the case. Okay? That’s the law. The law comes from there (indicating), the evidence comes from here (indicating). Nothing that was said by myself, co-counsel, or Mr. Shannon from right here is evidence. The only evidence comes from right there (indicating). And, ladies and gentlemen, it’s uncontroverted. It’s uncontroverted. It is uncontrovert-ed. The officer gave you—
Defendant objected and moved for a mistrial on the grounds that the assistant district attorney had improperly commented on his failure to testify. In response to defendant’s objection, the assistant district attorney stated:
He’s acting as both counsel and the Defendant in this case. I’m merely stating that he can’t testify from the lectern. But the evidence comes from the witness stand. This is a basic instruction.
In denying defendant’s motion for mistrial, the court stated:
All right. I’ve looked at Article 770, and I’ve looked at the cases interpreting these provisions. The case law, in my opinion, is quite clear, that a statement of uncontroverted evidence, without directly making reference to the Defendant’s failure to testify, isn’t sufficient to cause a mistrial.
I will go on to say that I want the Record to reflect that you have certainly pushed the envelope, Mr. Shannon, through your presentation and cross-ex- *723 animation today. As a matter of fact, in your closing argument you attempted to testify beyond the facts that were elicited from the witness stand. All right? So, at the end of the day, I don’t believe it warrants a mistrial. I will, however, give a cautionary instruction if that’s what you so desire. I will tell you that the jury instructions, as you well know, because you’ve reviewed them, certainly cover arguments of counsel not being evidence, arguments of counsel not being considered. And, more importantly, there is a specific charge with regard to not testifying and that that have no inference one way or the other.
1 ^That’s why I leave it in your shoes whether or not you want to have a cautionary instruction or let it lie. I will instruct the DA to move on.
At defendant’s request, the court then admonished the jury as follows:
All right. Ladies and gentlemen, at this juncture let me make this comment to you. No presumption of guilt may be raised, and no inference of any kind may be drawn from the fact that the Defendant did not testify.
And when one invokes their right to remain silent, there should be no inference of guilt as a result of one’s invoking their constitutional right to remain silent. Understood?
Motion denied.
Continue.
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the ... district attorney ... in argument, refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense[.]” State v. Jones, 08-20, p. 14 (La.App. 5 Cir. 4/15/09), 985 So.2d 234, 244 (citing LSA-C.Cr.P. art. 770(3)). The granting of a mistrial based on the State’s direct or indirect reference to the defendant’s failure to testify in his own defense is a prohibition that was established to safeguard the defendant’s Fifth Amendment right against self-incrimination. Jones, 08-20 at pp. 14-15, 985 So.2d at 244-45 (citing State v. Mims, 00-1507, p. 3 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 764, writ denied, 02-0466 (La.2/7/03), 836 So.2d 88). Generally, both direct and indirect references to the defendant’s failure to testify are banned by LSA-C.Cr.P. art. 770(3). Jones, 08-20 at p. 15, 985 So.2d at 245 (citing State v. Blank, 04-204, p. 19 (La.4/11/07), 955 So.2d 90, 140, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346). When a direct reference is made by the State regarding the defendant’s failure to take the stand, a mistrial should be declared regardless of whether the State intended for the jury to draw unfavorable inferences from the defendant’s silence. Id. (citing Mims, 00-1507 at 3, 806 So.2d at 764). However, when the State makes an indirect reference to the defendant’s |2fifailure to testify, the trial court must determine whether the remark’s intended effect on the jury was an impermissible reference to the defendant’s failure to testify or a permissible reference in a general statement that the State’s case was unrebutted. Id. Therefore, an indirect reference only requires a mistrial if the comment was intended to draw the jury’s attention to the defendant’s failure to testify. Jones, 08-20 at p. 15, 985 So.2d at 245 (citing State v. Lai, 04-1053, p. 15 (La.App. 5 Cir. 4/26/05), 902 So.2d 550, 560, writ denied, 05-1681 (La.2/3/06), 922 So.2d 1175). “In order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury’s attention on the defendant’s failure to testify.” Jones, 08-20 at p. 15, 985 So.2d at 245 (citing Mims, 00-1507 at 4, 806 So.2d at 764).
*724 “A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial.” State v. Smith, 04-340, p. 5 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 285. “Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion.” Id.
In the present case, we find that the assistant district attorney was simply referring to the fact that evidence comes from the witness stand, and not from the arguments of counsel or from defendant, who was acting as his own counsel. A review of the record reveals that the remarks were made in rebuttal to defendant’s closing argument in which he attempted “to testify beyond the facts that were elicited from the witness stand.” Specifically, during his closing argument, defendant stated:
As you can see, my eyes are always bloodshot, bloodshot l27red. And I had to see why. The good thing that came out of this, I found out that I had an allergy. And men don’t usually go to the doctor.
The State objected to defendant’s statements on the basis that they were beyond the scope of evidence, and the court sustained the State’s objection. The defendant further stated:
And you will note in the video that the officer has done things that was (sic) unethical, unreasonable to have me sit there and face those extremely bright lights for that long period of time. Put yourself in that situation. I mean I put my head down, I couldn’t see. It was a halo. You could see the halo. Imagine me looking directly into those lights.
The State again objected on the ground that defendant’s statements constituted testimony and not argument. In sustaining the State’s objection, the court stated:
Mr. Shannon, you’ve got to limit your argument to the facts and the evidence that were introduced at trial. You can make comments about what we saw on the video, but you cannot testify standing behind the lectern. Do you understand?
Because the court noted that defendant was improperly testifying while acting as counsel during closing argument, and because the assistant district attorney’s comments were made in rebuttal to defendant’s closing argument, we fail to find that the assistant district attorney’s remarks referred to defendant’s failure to testify or that the remarks were made to focus the jury’s 'attention on defendant’s failure to testify.
Nevertheless, even if the assistant district attorney’s remark was an impermissible indirect reference, which focused the jury’s attention on the defendant’s failure to testify, the error appears to be harmless. Harmless error occurs when the guilty verdict actually rendered in the trial was surely unattributable to the error. Jones, 08-20 at p. 16, 985 So.2d at 245 (citing State v. Norman, 99-600, p. 9 (La.App. 5 Cir. 2/16/00), 756 So.2d 525, 530, writ denied, 00-971 (La.3/23/01), 787 So.2d 1007). “Comment on the defendant’s failure to |2stake the stand at trial is a trial error, not a structural defect in the proceedings, that has been subject to harmless-error analysis at the federal level since Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).” Jones, 08-20 at p. 16, 985 So.2d at 245 (quoting State v. Thomas, 05-2373, p. 1 (La.4/17/06), 926 So.2d 490, 491 (per curiam)). Thus, unless an appellate court is thoroughly con *725 vinced that the remarks influenced the jury and contributed to the verdict, it should not reverse a conviction due to improper remarks during a closing argument. Jones, 08-20 at p. 16, 985 So.2d at 245 (citing State v. Jackson, 04-293, pp. 5-6 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, writ denied, 05-0232 (La.5/6/05), 901 So.2d 1094). In making its determination, the appellate court should give credit to the good sense and fairmindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence. Jones, 08-20 at p. 16, 985 So.2d at 245-46 (citing Jackson, 04-293 at 6, 880 So.2d at 73; Lai, 04-1052 at 13, 902 So.2d at 559).
In the present case, there is ample evidence in the record to support a guilty verdict, including testimony by Trooper Onstad that defendant appeared very unsteady on his feet, smelled of alcohol and that his eyes were bloodshot. Trooper Onstad also testified that defendant was uncooperative and would not comply with his instructions or speak. Finally, Trooper Onstad testified that defendant “kept fooling with his belt as if he was going to take his pants off,” and that “[h]e was just doing all kinds of abnormal things.” Based on his training and experience, Trooper Onstad recognized these characteristics as signs of alcohol, medication or drug impairment. Trooper Onstad further testified that, based on the smell alone, he knew that defendant had been drinking alcohol. Trooper Onstad also observed numerous beer bottle caps and a six-pack of beer on the floorboard of the vehicle ^defendant was driving. In addition to Trooper Onstad’s testimony, the State also presented the corroborating video of the stop and arrest.
Based on the testimony and evidence presented in this case, we find that the guilty verdict is not attributable to any error, but is rather based upon evidence that defendant was guilty of the charged offense.
Lastly, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case.
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, Rodney J. Shannon, are hereby affirmed.

AFFIRMED.

. It is noted that there has been recent legislative action regarding LSA-C.Cr.P. art. 709 which is not relevant to this discussion.

. LSA-C.Cr.P. art. 795(C) provides:
No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.

. The record reveals that the trial judge did not specifically state whether the defendant met his burden to establish a prima facie case of racial discrimination. However, a trial judge’s demand that a prosecutor justify his use of peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. State v. Green, 94-0887, (La.5/22/95), 655 So.2d 272, 288. Once a prosecutor offers a race-neutral explanation for the peremptory challenge and the trial judge rules on the ultimate question of intentional discrimination, the issue of whether defendant made a prima facie showing becomes moot. Green, supra, citing Hernandez v. New York, supra.