SUSAN M. CHEHARDY, Judge.
On October 13, 2009, the Jefferson Parish District Attorney filed a bill of information, charging Linner Ventris with violation of La. R.S. 40:981.3, possession with intent to distribute heroin within 1,000 feet of Helen Cox School. On February 25, 2010, the defendant entered a plea of not guilty at arraignment. On May 11, 2010, the case proceeded to trial before a twelve-member jury, which found the defendant guilty as charged. During trial, the defendant twice moved for a mistrial; both motions were denied.[1]
On June 18, 2010, the defendant’s motion for new trial was denied. On July 23, 2010, the defendant was sentenced to 20 years imprisonment at hard labor without benefit of probation or suspension of sentence. The defendant’s appeal ensued.
FACTS
On the afternoon of September 8, 2009, Detectives Tris Lear and Ashton Gibbs with the Gretna Police Department were conducting undercover narcotic surveillance in an unmarked pick-up truck with tinted windows. Detective Gibbs was seated in the driver’s seat, while Detective Lear was seated in the passenger seat. They were located in a parking lot to the rear of the Lapalco Boulevard 1 .^Apartments at 2300 Lapalco Boulevard, which was right next door to Helen Cox High School. Due to complaints of illegal narcotics activity, their investigation targeted Helen Cox High School and focused on distribution of Ecstasy.
After two or three hours of surveillance of the school, the officers saw a silver Mazda car pull into the parking lot and park directly next to the unmarked police vehicle. The driver of the vehicle was later determined to be Blake McDonald, and the passenger with him was determined to be Danielle Santiago. Detective Gibbs observed that the driver of the silver car was talking on his cell phone and appeared to be looking around the parking lot.
A few seconds after the conversation ended, the defendant emerged from the apartment building. The defendant was holding trash and proceeded to the dumpster, where he discarded it. The defendant walked to the driver’s side of the silver car after depositing his trash. At this time, the detectives were two to three feet from the defendant and their truck was higher than the silver car. Detective Lear testified that after the driver spoke briefly with the defendant, the driver gave cash to the defendant outside of the driver’s side window. Detective Lear further testified that after the defendant received the cash, he stuck his right hand in his right pocket and pulled out an item that appeared to be a bag.
At that moment Detective Gibbs exited the unmarked police vehicle, advised the subjects of the police presence, and ordered the defendant to the front of the car. According to Detective Lear, the defendant threw the item to the ground in a grassy area behind him. After Detective Gibbs retrieved the object, he advised Detective Lear that it appeared to be heroin. A field test yielded positive results for heroin.[2]
*1114 1 ¿Detective Lear testified that, as indicated in the report, the incident occurred within 1,000 feet of the school. He believed it had been measured at a little over or under a hundred feet. Detective Gibbs also testified about the incident, which he said occurred within 1,000 feet of Helen Cox High School.
Detective Gibbs testified he noticed the driver’s side window go down and observed the driver acknowledge the defendant’s presence. He further testified that after a few seconds of conversation, the driver gave the defendant currency and after the defendant accepted the currency he manipulated it as if he was counting or inspecting it. Detective Gibbs was able to determine that it was three bills and appeared to be $60.[3] According to Detective Gibbs, the defendant then stuck his hand in his right pants pocket and retrieved a clear plastic bag with a brown powder substance. Based on his experience, Detective Gibb believed that he observed defendant pull narcotics from his pocket and that he was observing a drug deal.
He explained that the detectives elected to conduct an investigatory stop. The police vehicle was only several feet away from the silver car and it was a truck, higher than the car. Detective Gibbs testified that he exited his vehicle, proceeded towards the front of the car, and announced “Police.” He explained that the defendant appeared startled and discarded the bag containing the brown powder to the ground while trying to “back pedal.” In contrast to Detective Lear’s testimony, Detective Gibbs denied that the defendant threw the bag behind him in a grassy area. Instead, he explained he retrieved the discarded bag from the cement in between the two vehicles. Detective Gibbs believed that Detective Lear may have searched the silver car, but that the only narcotics seized had been found |Bbetween the two vehicles on the cement. He explained that to his knowledge, no heroin was found in the car. According to Detective Gibbs, the defendant declined to cooperate in other investigations.
Detective Lear did not exit the vehicle at the same time as Detective Gibbs because the defendant was in the way. After Detective Lear was able to exit their vehicle, he instructed the driver and passenger of the silver car to exit and come to the rear of the car. He advised them that they were under investigation for possible attempts to purchase narcotics and informed them of their Miranda rights before he interviewed the driver. According to Detective Lear, neither McDonald nor Santiago was arrested. Detective Gibbs also denied that McDonald was arrested on that day. Detective Lear testified that McDonald provided assistance in connection with the investigation of the instant incident as well as provided a multitude of narcotic information that resulted in other arrests. Based on his cooperation, a decision was made that he would not be arrested.
McDonald was called by the defense at trial. He testified he was arrested on September 8, 2009, at Lapalco Place Apartments. He stated that the police searched his Mazda car that day and found heroin inside of his vehicle next to his front seat. He denied that the police found the heroin in a grassy area or on the cement between the police vehicle and his own vehicle. He testified that the heroin was dropped in his vehicle when the deal was made. He explained that the heroin came from defendant and he had received *1115 it from defendant by the apartments next to “Helen Cox.”
McDonald said both he and his girlfriend, who was pregnant, were detained and handcuffed after the heroin was found in his vehicle. He testified that he engaged in buys for investigations to keep himself out of jail, and that he was not charged with attempted possession of heroin or possession of heroin. McDonald [ ^identified the defendant in court. When asked about his relationship with the defendant, he testified the defendant was his drug dealer at the time.[4] He explained that he was obtaining heroin from the defendant.
When asked about his condition on the date at issue, McDonald explained that he was feeling bad because he wanted drugs and was throwing up. The State asked McDonald if it was “fair to say though, that given the fact that you were physically impaired by your heroin addiction, your recollection of specific events might not be accurate? Is that a fair statement?” McDonald agreed it was a fair statement.
McDonald admitted that he was uncomfortable testifying and uncomfortable identifying the defendant as his drug dealer. He agreed that he had received communications from people under circumstances where he felt pressured to come in and testify in this matter on the defendant’s behalf. Nevertheless, McDonald admitted that he went to the location with the intention of buying drugs and that he gave the defendant $60. He testified he was telling the truth when he said that the defendant was his drug dealer and that the defendant had provided the heroin that was seized by the police on that day. McDonald testified he had discussed the matter with the District Attorney before trial. McDonald also said the heroin was found in his car and not in between the two vehicles.
The defendant testified at trial that on September 8, 2009, he was staying in a Lapalco Court apartment. He admitted he had a prior conviction for possession of heroin and was on probation in September of 2009. The defendant’s testimony suggests that the same two officers involved in the instant matter had been the officers who arrested him for his prior possession of heroin offense.
|7The defendant testified that on the date he was arrested, he was taking out the trash. He said that McDonald had called him and offered him a ride to work because he was in the area. He further testified that after he threw out the trash the cop said for him to get down on the ground. He said he had walked to the car before and was about to get a cigarette and had seen inside the truck. However, he did not recognize the officers.
The defendant testified further that a gun was put to the back of his head before he was told to get on the ground by the dumpster. He was handcuffed; they searched his pockets and pulled out his wallet and his probation paper that was sticking out. He testified that one officer said, “This is Linner.” He said they saw he was on probation. He testified that the bag was found in the car and that nothing was found when he was searched. He said one officer told the others to say it was from the defendant.
The defendant denied that he walked to the car, that he took $60 from McDonald, and that he handed McDonald heroin. He denied that he was a drug dealer for McDonald on the date of his arrest or prior to that date. He testified that he was not in possession of drugs on the date of the *1116 incident and that he did not throw any heroin down to the ground. Instead, he insisted that the heroin was taken from McDonald’s vehicle.
ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in denying Ven-tris his right to counsel of his choice in violation of Article 1, § 13, of the Louisiana Constitution of 1974, and his right to a continuance so that he could fulfill this right in violation of due process of law.
pin Assignment of Error No. 1, the defendant argues the trial court erred in denying him his right to counsel of his choice and in denying his right to a continuance.
On the date set for trial, May 5, 2010, the defendant’s appointed counsel, Matt Goetz, appeared along with his new retained counsel, Benjamin Sanders. Goetz advised the court that the defendant’s family had hired a private attorney in lieu of the public defender. Goetz requested a continuance to allow Sanders to become familiar with the case.
The court informed the two defense attorneys they had until the next afternoon to decide which of them was representing the defendant. The court continued the case until May 11, 2010.
On May 11, 2010, the court would not allow Sanders, the retained counsel, to sign the record. The public defender, Goetz, objected to the ruling. The court then heard argument on a motion to suppress evidence, which was denied. Trial commenced thereafter.
The defendant suggests this was not a case where the matter had been set on the docket for a long period of time and this was slowing down the orderly process of court. He asserts the trial judge was unreasonable in demanding that trial commence without the defendant being afforded his constitutional right to choose counsel. He asserts that the judge and the prosecutor never articulated reasons on the record as to why this trial was classified as a priority matter, and that there was no pressing need for this trial to commence as quickly as it did.
The defendant contends the judge’s refusal to allow him to be represented by counsel of his choice was a clear abuse of discretion that prejudiced him. The defendant further argues the judge clearly abused her discretion by not allowing Sanders to sign the record and not granting his office adequate time to prepare for | atrial when the defendant’s effort to have counsel of his own choice represent him at trial was not a dilatory tactic for more time.
The State moves to strike this assignment of error pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, on the following grounds:
(1) This assignment makes references to issues not found in the record; only a minute entry exists to reflect that the trial court refused to allow Sanders to enroll as counsel on the day of trial.
(2) The minute entry does not reflect that a motion for continuance was made, nor is there an argument provided by the parties or the ruling and reasoning of the court.
(3) The arguments and alleged facts provided in the defendant’s brief are outside the record and cannot be considered by this Court.
We note that the Supplement to this record, filed on November 30, 2010, includes the transcripts of May 5, 2010 and May 11, 2010. It contains arguments and rulings relevant to this assignment of error. The Supplement was filed with this Court before the State filed its brief on January 4, 2011. Accordingly, the State’s *1117 contention that Rule 2-12.4 was violated has no merit.
According to the minute entries, the trial judge ordered a “PDO appointed attorney” on the day of the defendant’s arraignment on February 25, 2010. Thereafter, the trial was twice continued without the presence of defense counsel, on March 25, 2010 and April 26, 2010. On April 29, 2010, Goetz, the defendant’s appointed counsel, appeared and requested that trial be continued. The trial was continued until May 5, 2010.
On May 5, 2010, Goetz appeared and again requested that the trial be continued. Sanders appeared as well on this date, and advised the court that his office had been hired the previous week to represent the defendant. Sanders 11fladmitted that he was not ready for trial, had not received any discovery, and had not looked at the police report yet. The State responded that Goetz had previously mentioned that the defendant had an interest in hiring private counsel and recalled the court saying that they would go to trial with whatever attorney was present on this date.
After a bench conference, Goetz noted that the trial was set for that morning and, pursuant to a conference in chambers, he had filed motions on the defendant’s behalf, including a motion for an instanter subpoena, requesting the presence of two lay witnesses and two officers. He explained that the lay witnesses were not available, and he moved that the matter be continued at the court’s discretion.
The trial judge stated that she was not letting Goetz off the record, but she gave Sanders and Goetz until 4:80 the next afternoon to determine who would represent the defendant. The judge advised that if Sanders decided to undertake the case, he was to file a motion to enroll prior to 4:30 the next afternoon. However, she explained, “No matter what, this case is going to trial next week.” She said the case would be tried on the 12th or 13th, if not on the 11th. The judge remanded the defendant to Jefferson Parish Correctional Center to allow the attorneys to prepare for trial with him. The trial was continued until May 11, 2010.
On May 11, 2010, Goetz appeared in court for trial, and Sanders orally moved to enroll in the matter. Goetz explained that the defendant’s family had retained Martin Regan’s firm to represent the defendant and requested that the court allow the defendant to exercise his constitutional right to have counsel of his choice. Sanders explained that the defendant’s family had entered into an agreement with his firm and that the defendant desired that he represent him.
Sanders indicated, however, that he was not prepared to go to trial on that date, noting he was not yet counsel of record and had not received discovery in the Inmatter. Sanders attempted to argue that the defendant would be the only person “hurt” by a continuance in the matter. However, the court explained that Sanders was wrong because “people” had to leave their homes.[5]
The State then reported that a witness had received threatening phone calls since the defendant had been in custody. The State explained there were three phone messages: the first was innocuous; the second did not contain an explicit threat, but was intimidating; the third call was an express threat. The State admitted that at least the last two calls appeared to be from someone other than the defendant, *1118 because the calls referenced “my cousin’s case.”
The State explained that someone subpoenaed by the defense had to remove themselves from the jurisdiction. The State explained that it had provided assistance to that person, his girlfriend and to their extended families. The State further explained that the third call included a portion regarding “I know where you live” and then there was a report of a break-in at that home about a week prior to the present date.
The State argued that there was a compelling reason to move forward with the trial. The State explained that the court had given the defense additional time to secure witnesses, not to hire a lawyer, noting that the court had made clear when the case was previously delayed that the matter would be going to trial regardless of counsel. The State argued that the witnesses were in town and available, and that trial should proceed that day.
The trial judge stated that she had instructed the family in court in April that they could hire new counsel, but the new counsel would not impede the progress of trial, which would be on May 5th. She explained that they did not go to trial on May 5th because of the subpoenas the defendant issued for witnesses who were out |12of town and could not be served. She further explained that she continued the trial, but told Sanders that if his office would be representing the defendant to file a motion to enroll by 4:30 p.m. on May 6th, and he did not file such a motion. She stated she would not entertain a motion to enroll on the morning of trial, which is what Sanders attempted.
The trial judge advised Sanders that if he was ready to try the case she would sign his motion to enroll, but she would deny the motion if he was not prepared. She acknowledged that the defendant had a right to counsel, but also said he could not manipulate that right to obstruct the orderly procedure of the court or to interfere with the fair administration of justice. She stated that she gave a continuance for him to get discovery and to prepare for trial, but he chose not to “heed that warning.” She asked Sanders if he wished to proceed to trial that day, and Sanders responded, “Your Honor, I am not prepared to proceed to trial today since I have not received discovery.” The trial judge denied his motion to enroll.
Goetz then recognized that at the prior meeting the trial judge had indicated that the trial would be Tuesday, Wednesday, or Thursday of that week. He asked if the trial could be Wednesday or Thursday, instead of Tuesday, noting that he was prepared to ton over his diseoveiy to Sanders. The State noted that delaying the case until Thursday would require the witnesses who were brought in from another jurisdiction to wait.
The trial judge indicated that she would wait for Thursday if Sanders said he would try the case on Thursday, but would not go “through this again on Thursday.” She threatened to hold Sanders in contempt of court if he agreed to the representation and then sought a continuance on Thursday. Sanders stated that he would not be able to try the case on Thursday, that he had other cases that had to |isbe taken care of. After Sanders stated that he could not represent the defendant at trial on Thursday, Goetz responded, “Okay.” Goetz later objected to the ruling.
The Sixth Amendment to the United States Constitution provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.” State v. Reeves, 06-2419, p. 35 (La.5/5/09), 11 So.3d 1031, 1055, cert. denied, — U.S. -, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009).
*1119 The Supreme Court has found that it is structural error requiring reversal and a violation of the Sixth Amendment when a criminal defendant has been denied his right to retained counsel of choice. Reeves, 06-2419 at 36, 11 So.3d at 1056. When the right to be assisted by counsel of choice is wrongly denied, no harmless error analysis is required regarding counsel’s effectiveness or prejudice to the defendant. Id. The Supreme Court stated:
Deprivation of the right is “complete” when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice — which is the right to a particular lawyer regardless of comparative effectiveness — with the right to effective counsel — which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.
Reeves, 06-2419 at 36, 11 So.3d at 1056, quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S.Ct. 2557, 2563, 165 L.Ed.2d 409 (2006).
The Louisiana Constitution ensures similar rights to the assistance of counsel for a criminal defendant as those arising under the federal constitution. Reeves, 06-2419 at 37, 11 So.3d at 1056. Generally, a person accused in a criminal trial has the right to counsel of his choice. Reeves, 06-2419 at 37-38, 11 So.3d at 1057 (quotation omitted). An indigent defendant’s right to choose his defense counsel, however, only allows the defendant to retain the attorney of choice if the 114defendant can manage to do so. The right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. Id.
A defendant’s right to choose an attorney must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. State v. Burbank, 07-125, p. 7 (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, 1178, writ denied, 07-2287 (La.4/25/08), 978 So.2d 364. The trial court’s ruling on this issue will not be disturbed absent a clear showing of abuse of discretion. State v. Bridgewater, 00-1529 p. 21 (La.1/15/02), 823 So.2d 877, 896, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).
A motion for a continuance must be filed at least seven days prior to the commencement of trial, in writing and stating the specific grounds on which it is based. La.C.Cr.P. art. 707. However, there is a jurisprudential exception to the requirement for a written motion where the circumstances producing the motion occur unexpectedly and there is no opportunity to prepare the motion. State v. Shannon, 10-580, p. 10 (La.App. 5 Cir. 2/15/11), 61 So.3d 706, 714, writ denied, 2011-0559 (La.9/30/11), 71 So.3d 283.
The decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. Shannon, 10-580 at 11, 61 So.3d at 715. See also La.C.Cr.P. art. 712.[6]
Absent a showing of specific prejudice, the Louisiana Supreme Court generally declines to reverse convictions, even when there is an improper denial of a motion for a continuance. State v. Wilson, 09-108, p. 8 (La.App.Cir.12/29/09), 30 So.3d 149, 154. The denial of a motion for continuance is not grounds for 11sreversal, absent abuse of discretion and a showing of *1120 specific prejudice. Shannon, 10-580 at 11, 61 So.3d at 715.
In the present case, the May 11, 2010 minute entry does not reflect that defense counsel moved for a continuance on the day of trial. Likewise, the transcript does not reflect that a continuance was specifically sought. Sanders, who was not the attorney of record, only indicated that he wished to enroll, but was not prepared for trial on that date. Sanders did suggest that defendant would be the only one “hurt” by a continuance.
Even were we to construe Sanders’ request for additional time to prepare as a motion for continuance, we find no basis for relief on this assignment. The trial judge gave Sanders the opportunity to represent the defendant. She was willing to move the trial date from the Tuesday to the following Thursday, if Sanders was willing to do so. However, Sanders was not able to represent defendant on that later date, so the trial proceeded as scheduled. The judge was willing to continue the matter until two days later, but refused to consider a motion for continuance on the Thursday.
The defendant failed to move for a continuance pursuant to La.C.Cr.P. art. 707. There was no written motion for continuance of the May 11, 2010 trial date, and no such motion was filed at least seven days before May 11, 2010. Further, the circumstances producing such a motion did not occur unexpectedly so that counsel did not have the opportunity to prepare the motion, which would have triggered the jurisprudential exception. The circumstances were the same circumstances counsel faced previously.
The issue is whether the defendant was denied the right to counsel of his choice. The trial judge allowed the defendant to choose counsel; it was Sanders, “the counsel of his choice,” who chose not to represent defendant due to his lack of | ^preparation of the case. The judge learned at the end of April that the defendant’s family would be hiring counsel for him. On May 5th, the judge continued the trial to allow for the attendance of witnesses from outside the court’s jurisdiction. She told Sanders to file a motion to enroll by 4:30 the next day if he was going to represent defendant at trial, which was scheduled on May 11th.
Sanders filed no motion at that time. Instead, he waited and attempted to enroll on the day of trial, May 11th. Had he been ready for trial, the judge was prepared to grant his motion to enroll, as well as to delay the trial for two days. Sanders was not able to represent the defendant on that date, however.
Although defendant suggests there was no basis for giving this trial priority status, the record suggests otherwise. A witness had received threatening and intimidating calls regarding his testimony at trial. From the context of the record, it appears this witness was McDonald. This witness, his girlfriend, and their families were staying out of town, but were in town to testify-
Further, inconvenience was not the only factor. The witness was threatened by a phone call and then his home was broken into just prior to trial. Also, the witness apparently had to be brought to court by police officers. The safety and protection of witnesses were underlying factors in the matter’s priority status, which supports the State’s suggestion that there was a compelling reason not to delay the trial.
The right to choose counsel is not absolute. Hiring new counsel on the day of trial obstructs the orderly proceedings of the court, especially when the proposed new counsel wanted to enroll on May 5th, was told to enroll by the following day, but failed to do so and instead he attempted to enroll on the day of trial, May 11th. Con *1121 sidering these facts, the defendant failed to show he was attempting to exercise his right to choose an attorney at a reasonable time, in a reasonable manner, and at | wan appropriate stage of the proceedings. See Burbank, 07-125 at 7, 971 So.2d at 1178.
A defendant in a criminal trial cannot force a postponement by a last minute change of counsel. Wilson, 09-108 at 8, 30 So.3d at 154. “Absent a justifiable basis, ‘[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications.’” Bridgewater, 00-1529 at 20-21, 823 So.2d at 896 (quoting State v. Leggett, 363 So.2d 434, 436 (La.1978)). This Court has found no abuse of the trial court’s discretion in denying a motion for continuance on the day of trial to replace attorneys where the defendant was represented by counsel prepared for trial. Wilson, 09-108 at 8-9, 30 So.3d at 154.
The record here does not reflect, nor does it appear the defendant argues, that Goetz was not prepared for trial. Goetz expressed that “this is extremely new on our docket and I was scrambling to abide by the Court’s order and get this thing ready for trial. So I did what I believe was necessary to get this matter to where it is today hastefully.”
Accordingly, we find no abuse of discretion in the trial court’s denial of Sanders’ motion to enroll.
ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in denying the defense motion for mistrial after the State allowed evidence of other criminal activity to be introduced before the jury over objections by the defense.
In his second assignment of error, the defendant argues that the trial court erred in denying his motion for mistrial, after evidence was introduced for the sole purpose of showing bad character on the defendant’s part, and its prejudicial effect clearly outweighed its probative value.
118Puring the cross-examination of defense witness McDonald, the State asked McDonald, “What was your relationship to Linner Ventris?” McDonald responded, “It [sic] was my drug dealer at the time.” The State followed up by asking over what period of time had the defendant been his drug dealer. Defense counsel objected and moved for a mistrial, which the trial judge denied.
The State moves to strike this assignment of error, pursuant to Rule 2-12.4 of the Uniform Rules, Courts of Appeal. The State argues that the defendant failed to include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error and, therefore, requests this Court to disregard the defendant’s argument.
Alternatively, the State addresses the merits of the argument, contending that the defense opened the door to this line of questioning when it called McDonald to the stand, knowing their relationship. The State asserts that the defendant assumed the risk that such information would be revealed and, even if this was error, the admission of such testimony was harmless. The State explains that the fact that the defendant was McDonald’s drug dealer was cumulative evidence, because McDonald testified that he purchased the heroin from the defendant.
Although the defendant does fail to include references to the record in the argument section for this assignment of error, the Statement of Facts section of the defendant’s brief has specific references to the record. That includes the specific page reference to McDonald’s testimony that the defendant was his drug dealer. It appears the defendant simply chose not to *1122 repeat the page references in the argument section when the specific references had already been presented in his brief. Accordingly, we deny the State’s motion to strike.
As to the merits, the defendant argued that this evidence of other crimes prejudiced the defendant greatly, because he denied selling McDonald any heroin. [inHe added that the officers presented contradictory testimony regarding where they allegedly saw the defendant discard the heroin, while McDonald testified that the heroin was discovered inside his vehicle.
Defense counsel asserted that he had not asked about the defendant being a drug dealer and that the State had solicited information that there were other drug deals over a long period of time. The prosecutor responded that the door had been opened for this and he was trying to fill in gaps left from direct examination of the witness. The trial judge agreed that the door had been open and noted the defendant’s objection, but denied his motion for mistrial.
McDonald then testified that the defendant had been his drug dealer for approximately a month and he was obtaining heroin from him.
Although defense counsel did not specifically object to “other crimes evidence,” counsel did indicate that the prosecutor was attempting to solicit testimony that the defendant was doing other drug deals with him over a long period of time. The trial judge simply denied the motion, reasoning that the door had been opened.
La.C.Cr.P. art. 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized under La.C.Cr.P. arts. 770 or 771.
La.C.Cr.P. art. 770(2) provides that a mistrial shall be granted, upon motion of the defendant, when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
As a general rule, Article 770 does not apply to testimony by a state witness, since a witness is not considered a “court official.” However, an impermissible |anreference to another crime deliberately elicited by the prosecutor is imputable to the State and triggers the rule mandating a mistrial. State v. Lagarde, 07-123, pp. 9-10 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684. The defendant here is objecting to testimony given by a defense witness, rather than to remarks or comments made by a judge, district attorney, or court official.
Although the jurisprudence has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the State and would mandate a mistrial, unsolicited and unresponsive testimony is not chargeable against the State to provide a ground for mandatory reversal of a conviction. State v. Hills, 10-1521, 2011 WL 1103455 at *4 (La.App.Cir.3/25/11) (not designated for publication).
Further, a statement is not chargeable to the State solely because it was in direct response to questioning by the prosecutor. Id. Although a prosecutor might have more artfully formulated the question that provoked a witness’s response, where the remark was not deliberately obtained by the prosecutor to prejudice the rights of the defendant, it is not *1123 the basis for a mistrial. Id. Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive defendant of a fair trial. State v. Overton, 618 So.2d 439, 441 (La.App. 5 Cir.1993).
La.C.Cr.P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
| ¾1 (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial should be granted under Article 771 only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Thomas, 08-390 p. 11 (La.App. 5 Cir. 1/27/09), 8 So.3d 80, 86-87, writ denied,, 09-0626 (La.11/25/09), 22 So.3d 170.
We do not find that the State solicited the statement from the defense witness that the defendant was his drug dealer. The question regarding their relationship could have been answered in many ways other than the way it was actually answered. A mistrial was not mandated, because the statement was not imputable to the State.
The statement is not chargeable to the State just because it was in direct response to questioning by the prosecutor, even if the question was inartfully formulated. Even when the State took the questioning a step further and inquired as to the time period of the relationship, the State was faced with conflicting testimony and was trying to present an explanation for the discrepancies. The length of the relationship appeared relevant to the credibility of the witness, especially when the State questioned him specifically about his recollection of events that occurred on that day because of his physical impairment.
Further, the trial court did not err in denying the motion for a mistrial, because the defendant has failed to show how he was prejudiced by McDonald’s comment. The remarks of the witness that identified the defendant as his drug dealer did not make it impossible for the defendant to obtain a fair trial. The ^officers both testified that they observed the defendant engage in what appeared to be a drug transaction, although there was some discrepancy as to where the heroin was recovered. Although McDonald testified that the heroin was found in his vehicle, his testimony, as well as the officers’ testimony, corroborated the statement that the defendant was McDonald’s drug dealer. Although the defendant testified he did not participate in the drug transaction or attempt to sell McDonald the drugs, the jury obviously chose to believe the other witnesses.
We also find that McDonald’s testimony that the defendant was his drug dealer was not testimony containing other crimes evidence. Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. See La. C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). Evidence of other acts of misconduct is gener *1124 ally not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a “bad person.” State v. Jacobs, 99-0991, p. 24 (La.5/15/01), 803 So.2d 933, 951, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002). This rule of exclusion stems from the “substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. Id.
However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule. State v. Dauzart, 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. Evidence of other crimes may be allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1).
| gjEven when the other crimes evidence is offered for a purpose allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. See La. C.E. art. 403; Jacobs, supra. The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime. State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
The defendant bears the burden to show that he was prejudiced by the admission of the other crimes evidence. Dauzart, 844 So.2d at 165-166. Absent an abuse of discretion, a trial court’s ruling on the admissibility of evidence pursuant to La. C.E. art 404(B)(1) will not be disturbed. State v. Merritt, 04-204 (La.App. 5 Cir. 6/29/04), 877 So.2d 1079, 1085, writ denied, 04-1849 (La.11/24/04), 888 So.2d 228.
The State questioned the witness regarding his relationship with the defendant and the witness responded that the defendant was his drug dealer. The State took this questioning a step further by then asking over what period of time he was his drug dealer. This question was not answered until after the denial of the mistrial. Before the witness’ answer that the defendant had been his drug dealer for about a month, the jury could have believed that the defendant was simply the witness’ drug dealer on the date of the incident and not on other occasions, making this testimony an integral part of the act at issue. Defense counsel did not further object when the time period was actually given.
The testimony did not refer to specific crimes and appeared vague and ambiguous. A comment must not “arguably” point to a prior crime; to trigger ^mandatory mistrial pursuant to Article 770(2), the remark must “unmistakably” point to evidence of another crime. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999).
Even assuming that the testimony that the defendant was McDonald’s drug dealer constituted impermissible references to other crimes, any such error is subject to a harmless error analysis. See State v. Marsalis, 04-827, p. 6 (La.App. 5 Cir. 4/26/05), 902 So.2d 1081, 1085.
*1125 The test for determining if an error was harmless is whether the verdict actually rendered in the case was surely unattributable to the error. Id., 04-827 at 8, 902 So.2d at 1087. In light of the other evidence presented at trial regarding the drug transaction that was being witnessed by the officers as well as the testimony of McDonald regarding the drug deal, even if this was other crimes evidence, the admission was harmless because the verdict rendered was surely unattributable to the error. Regardless of whether the defendant had been the witness’ drug dealer in the past, there was evidence at trial that the defendant was acting as his drug dealer on that day.
“A witness may be cross-examined on any matter relevant to any issue in the case, including credibility.” La. C.E. art. 611(B). Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness’ story to test the witness’ perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit the witness. State v. Draughn, 05-1825, p. 48 (La.1/17/07), 950 So.2d 583, 616, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). The ruling of the trial court as to the scope and extent of cross-examination should not be disturbed absent an abuse of the court’s broad discretion. Id.
| afjUp to that point, McDonald had testified that the heroin was found inside of his vehicle and not outside of the vehicle, contrary to the officers’ testimony. The prosecutor’s question, although open-ended, could have been soliciting whether his relationship with the defendant was of such a nature as to give the witness incentive to protect the defendant. That goes to the credibility of this witness.
The follow-up question regarding the time frame when the defendant was his drug dealer is more problematic than the initial question. The State attempted to establish that the witness was an addict, to justify his inconsistent recollection of the specific facts on the day of the incident. Nevertheless, any such error in the admissibility of this testimony is harmless in light of evidence presented in this matter.
We find the trial court did not err by denying the motion for mistrial.
ASSIGNMENT OF ERROR NUMBER THREE
Ventris was denied due process when the prosecution, during the course of trial, solicited testimony from two police officer [sic] which it knew to be false.
In his third assignment of error, the defendant argues he was denied due process when the State solicited testimony from two officers that it knew to be false.
Specifically, the defendant asserts that Detective Gibbs gave testimony that was inconsistent with the testimony of Detective Lear regarding the location of the heroin seized in the matter. In addition, the detectives’ testimony was inconsistent with that of McDonald, who testified that the heroin was in fact found in his vehicle. The defendant argues that McDonald testified he had discussed the location of the heroin with the State prior to trial. The defendant concludes that the | ^prosecutor did not call McDonald as a witness to suppress the truth, knowing he wanted to place the heroin outside of the vehicle.
The defendant alleges that the detectives were in collusion with the prosecutor to place the heroin outside of the vehicle, and that this false testimony was solicited by the State. The defendant concludes that McDonald’s testimony was more than likely truthful because it was against his penal interest. He contends that there is a reasonable likelihood that their false tes *1126 timony could have affected the trial’s outcome. He argues that the State’s case would have seriously been weakened had the officers testified that the heroin was found inside the car, especially when the evidence of the $60 was not preserved. The defendant asserts he is entitled to a new trial.
The State responds to this assigned error by again moving to strike the argument for failing to reference by volume and page to the record in compliance with Rule 2-12.4. Nevertheless, the State briefly responds that the defendant only makes a bold statement that the State elicited false testimony from two witnesses without offering any evidence to support his assertion other than the fact that there was conflicting testimony at trial. The State contends that conflicting testimony does not equate to perjury and that credibility is within the sound discretion of the jury, who heard all conflicting testimony and found defendant guilty as charged.
Because the defendant includes references to the record in the Statement of the Case section of his brief, we deny the motion to strike and we address the assigned error.
If a prosecutor allows a State witness to give false testimony without correction, a reviewing court must reverse the conviction gained as a result of that perjured testimony, even if the testimony goes only to the credibility of the witness. See Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); State v. Broadway, 96-2659, p. 17 (La.10/19/99), 753 So.2d 801, 814, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000); State v. Williams, 338 So.2d 672, 677 (La.1976). However, the grant of a new trial based upon a Napue violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material. State v. Phillips, 10-0582, p. 9 (La.App. 4 Cir. 2/17/11), 61 So.3d 130, 136, writ denied, 2011-0582 (La.10/7/11), 71 So.3d 311.
In Broadway, supra, the Louisiana Supreme Court explained the following:
To prove a Napue claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony. When a prosecutor allows a state witness to give false testimony without correction, a conviction gained as a result of that perjured testimony must be reversed, if the witness’s testimony reasonably could have affected the jury’s verdict, even though the testimony may be relevant only to the credibility of the witness. Id. at 269, 79 S.Ct. 1173. Furthermore, fundamental fairness to an accused, i.e., due process, is offended “when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.” Id. When false testimony has been given under such circumstances, the defendant 'is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
Defendant’s argument is wholly unsubstantiated, as he failed to provide any evidence in support of his allegation and merely relies on his bare assertion. We accordingly reject the contention based on this record and relegate defendant to post-conviction relief if evidence in this regard is subsequently obtained.
Broadway, supra at 814.
There was conflicting evidence presented regarding the location of the heroin that was seized. Detective Gibbs testified that the heroin was discarded by the defendant between the two vehicles, while Detective Lear testified that the *1127 | ^defendant threw the heroin behind him in a grassy area. McDonald testified that the heroin was not seized from outside his vehicle, but rather was seized from inside of his vehicle. The defendant also testified that the evidence was recovered from inside of McDonald’s vehicle.
There is a possible explanation for the inconsistent testimony other than the only explanation presented by the defendant. Detective Gibbs is the one who seized the evidence; he was in a better position to testify as to the location, in comparison to Detective Lear, who was seated in the vehicle at the time the defendant was said to have discarded the evidence. Further, McDonald admitted that it was fair to suggest that he was physically impaired by his addiction at the time and his recollection of specific events might not have been accurate.
In addition, the State’s examination of McDonald established that McDonald was uncomfortable testifying against the defendant. It was also established that McDonald had received communications from people under circumstances where he felt pressured to testify on the defendant’s behalf.
McDonald did admit that he had discussed the fact that the heroin was found in his vehicle before trial with the “district attorney.” However, the record does not reflect that the defendant objected at this time or accused the State of eliciting false testimony.
In State v. Hyman, 09-409, pp. 16-17 (La.App. 5 Cir. 2/9/10), 33 So.3d 271, 282, writ denied, 10-0548 (La.10/1/10), 45 So.3d 1094, the defendant argued on appeal that his conviction should be reversed under Napue, because the prosecutor allowed a key State witness to give perjured testimony at trial without correction. The State argued that the defendant failed to preserve the perjury issue for appeal, since he failed to raise it at trial. Id. This Court agreed with the State, but nevertheless addressed the merits of the defendant’s argument and found no error.
¡^McDonald was not the State’s witness in this matter, and there was no evidence of collusion. Further, the defendant concludes the State had knowledge of the fact that McDonald believed the heroin was found in his vehicle, without offering any support other than McDonald’s testimony that suggests he told the State about this prior to trial. That proves only that there is a discrepancy in the opinions of the witnesses as to the location of the recovered evidence.
The defendant chooses to believe that only McDonald is truthful, and assumes the testimony of the detectives is false. There were reasonable explanations for the discrepancies, however. The decision as to whose testimony regarding the location of the seized evidence was accurate was a credibility determination properly left for the fact-finder.
We find no merit to this assignment of error.
ERROR PATENT DISCUSSION
We reviewed the record for errors patent, pursuant to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990).
The defendant was convicted of violation of La. R.S. 40:981.3, possession with intent to distribute heroin within 1,000 feet of a school. La. R.S. 40:981.3 provides as follows, in pertinent part:
E. (1) Whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970.
*1128 (2) A sentence imposed for a violation of the provisions of this Section shall not be subject to parole, probation, or suspension of sentence to the extent that the minimum sentence for a violation of a felony provision of R.S. 40:966 through 970 is not subject to parole, probation, or suspension of sentence.
| snThe penalty for possession with intent to distribute heroin is imprisonment for not less than five nor more than fifty years at hard labor, at least five years of which must be served without benefit of probation, or suspension of sentence, and the possible imposition of a fine of not more than $50,000.00. State v. Collins, 09-283 (La.App. 5 Cir. 12/8/09), 80 So.3d 72, writ denied, 10-0034 (La.9/3/10), 44 So.3d 696 (citing La. R.S. 40:966(B)(1)).[7]
Hence, the defendant faced a mandatory fine of $50,000.00 and possible imprisonment for 75 years, as well as a sentence without benefit of probation or suspension of sentence for five years. The defendant actually was sentenced to 20 years imprisonment at hard labor without benefit of probation or suspension of sentence.
The defendant received an illegal sentence, in that his sentence is illegally lenient because the mandatory fine of $50,000.00 was not imposed, and also because the entire sentence was made without benefit of probation or suspension of sentence, rather than only five years.
The appellate court may correct an illegal sentence at any time regardless of whether either party raises the issue. See La.C.Cr.P. art. 882; State v. Campbell, 08-1226, p. 8 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842. This authority is permissive rather than mandatory. State v. Cosie, 09-933, p. 11 (La.App. 5 Cir. 6/29/10), 44 So.3d 314, 321.
The State has not raised this issue. However, the appellate court also has the discretion to impose the $50,000.00 fine. See State v. McCray, 07-143, p. 10 (La.App. 5 Cir. 7/30/07), 966 So.2d 616, 622, writ denied, 07-1826 (La.2/1/08), 976 So.2d 715.
|si0n appeal the defendant is represented by retained counsel rather than the Louisiana Appellate Project, which represents indigents. During trial, however, he was represented by the Public Defender’s Office, which indicates he was indigent at that time. In Campbell, supra, this Court recognized that in indigent defender matters, we often have decided not to use our authority to correct the illegal sentence regarding the mandatory fine. Id. See also State v. England, 09-746 (La.App. 5 Cir. 3/9/10), 38 So.3d 383.
Accordingly, we decline to correct the illegally lenient sentence by imposing the fine. See State v. Ronquille, 09-231, p. 11 (La.App. 5 Cir. 11/24/09), 26 So.3d 823, 828 n. 5, writ denied, 2010-0525 (La.2/25/11), 58 So.3d 455; State v. Young, 07-1021, p. 6 (La.App. 5 Cir. 3/25/08), 984 So.2d 144, 148, writ denied, 08-0938 (La.11/21/08), 996 So.2d 1105; State v. Paul, 05-612, p. 19 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 357.
In addition, the trial judge imposed the entire 20-year sentence without benefit of probation or suspension of sentence. Under the statute, only five years of the sentence were to be imposed without benefit of probation or suspension of sentence. This patent error requires corrective action.
*1129 When a sentencing error involves the imposition of restrictions beyond what the legislature has authorized in the sentencing statute, a Court of Appeal “should not rely on La. R.S. 15:801.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La.C.Cr.P. art. 882 to correct an illegal sentence “ ‘at any time.’ ” ” McCray, 07-143 at 10, 966 So.2d at 622 (quoting State v. Sanders, 04-0017 (La.5/14/04), 876 So.2d 42 (per curiam)).
Therefore, we amend the sentence to reflect that only five years of the sentence are without the benefit of probation or suspension of sentence. We direct the district court to make the entries in the commitment reflecting this change and |Si>we direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
DECREE
For the foregoing reasons, the conviction is affirmed. The sentence is amended to reflect that only five years of the sentence are without the benefit of probation or suspension of sentence. As amended, the sentence is affirmed.
The district court is ordered to amend the commitment to reflect this change. The clerk of the district court is ordered to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced.

CONVICTION AFFIRMED; SENTENCED AMENDED AND AFFIRMED, WITH INSTRUCTIONS

. Although the transcript shows there were two motions for mistrial, the minute entry reflects only one mistrial motion and denial.

. Thomas Angelica, an expert in the field of analysis and identification of narcotic substances, testified he examined the plastic bag containing the brown powder. His testing proved that the substance was heroin.

. The State presented testimony that the $60 was "sent with Ventris' property” pursuant to die policy of die Gretna Police Department.

. This statement is the subject of the defendant’s Assignment of Error Number Two regarding the denial of his motions for a mistrial.

. As explained below, it appears the trial judge was referring to witnesses who were outside of the jurisdiction.

. La.C.Cr.P. art. 712 provides: "A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.”

. Prior to the amendment to the statute in 2001, the penalty was mandatory life imprisonment. See 2001 La. Acts No. 403, § 4, effective June 15, 2001; State v. Dick, 06-2223, p. 4 (La.1/26/07), 951 So.2d 124, 127.