**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 KA 0725

STATE OF LOUISIANA

VERSUS

JAMES BATISTE, III

JUDGMENT RENDERED: **MAY 2 4 2023**

* * * * * * *

Appealed from the
Twenty-Third Judicial District Court
Parish of Ascension • State of Louisiana
Docket No. 39,362

Honorable Jason Verdigets, Judge Presiding

* * * * * * *

Letty S. DiGiulio
New Orleans, Louisiana
*And*
Stavros Panagoulopoulos
New Orleans, Louisiana

COUNSEL FOR APPELLANT/
DEFENDANT
James Batiste, III


Ricky L. Babin
District Attorney
Donald David Candell
Joni M. Buquoi
Lindsey Manda
Assistant District Attorneys
Gonzales, Louisiana

COUNSEL FOR APPELLEE
State of Louisiana

* * * * * * *

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

**PENZATO, J.**

The State of Louisiana charged the defendant, James Batiste, III, by bill of information with attempted second-degree murder, a violation La. R.S. 14:30.1 and 14:27.[1] The defendant pled not guilty. The defendant subsequently changed his plea to not guilty and not guilty by reason of insanity, and, following a jury trial, was found guilty as charged. For the attempted second-degree murder conviction, the trial court sentenced the defendant to twenty-five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The trial court also mistakenly imposed a two-year sentence for the *nolle-prossed* count. The defendant now appeals, designating four assignments of error. We affirm the conviction and sentence for the attempted second-degree murder conviction. We vacate the two-year sentence and remand to the trial court for correction of the commitment order, if necessary.

## FACTS

On the morning of July 1, 2018, the defendant and his fiancée, Rebecka Bootle, drove Ms. Bootle's brother to work at the Quaker Steak & Lube restaurant (Quaker Steak) in Gonzales, Louisiana. The defendant's best friend, Jarrett Lands, also worked at Quaker Steak. Mr. Lands was outside smoking a cigarette when he saw the defendant pull into a parking spot. While Ms. Bootle's brother walked into Quaker Steak, Mr. Lands walked to the defendant's car and got in to greet the defendant. The defendant did not say anything. Mr. Lands, realizing the defendant did not want to talk, told the defendant he would "holler" at him after he got off of work. As Mr. Lands got out of the car, the defendant got out with a Ruger .45 caliber handgun and shot Mr. Lands in the arm. Mr. Lands did not have a gun. Mr. Lands ran across the Quaker Steak parking lot, across the street, and into the SpringHill

---

[1] The defendant was also charged with simple criminal damage to property, but that charge was *nolle prossed* on the morning of trial.

2

Suites Hotel parking lot. While Mr. Lands ran, the defendant chased him and shot him again, including in the back. Mr. Lands collapsed in the hotel parking lot. The defendant approached Mr. Lands, stood over him, then left. He was picked up by Ms. Bootle, who had gotten in the driver's seat of the defendant's car. The defendant and Ms. Bootle were stopped shortly thereafter on I-10 by the police. The defendant was arrested and did not give a statement.

Mr. Lands was shot three times but survived his wounds. He was in the ICU for twenty-three days. The defendant testified at trial that someone tried to rob him in New Orleans several months before the incident and that he was fearful. Ms. Bootle bought him the Ruger handgun for his birthday. According to the defendant, Mr. Lands got into his car and reached for his right pocket. When Mr. Lands got out of the car, the defendant got out. The defendant testified Mr. Lands did a "pump fake" in his pocket, so the defendant shot him. When asked why he chased Mr. Lands across the parking lot and the street, the defendant indicated he was scared. The defendant indicated that he had no intent to kill Mr. Lands.

## ASSIGNMENTS OF ERROR NOS. 1 AND 3

In these related assignments of error, the defendant argues, respectively, he was denied his right to effective assistance during pre-trial plea negotiations, which affected his ability to make an informed decision about the State's plea offers; and he was denied effective assistance at sentencing.

A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the trial court, where a full evidentiary hearing may be conducted. *State v. McKinney*, 2015-1503 (La. App. 1 Cir. 4/25/16), 194 So.3d 699, 708, writ denied, 2016-0992 (La. 5/12/17), 220 So.3d 747. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be

3

addressed in the interest of judicial economy. *Id.* See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The defendant's claim that he received ineffective assistance of counsel during plea bargaining is a matter for post-conviction relief. *State v. Kendall*, 2016-0207 (La. App. 1 Cir. 9/15/17), 231 So.3d 661, 664. The basis for ineffective assistance of counsel at sentencing is whether the defendant can "show a reasonable probability that but for counsel's error, his sentence would have been different." *State v. Allen*, 2003-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 879. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond what is contained in the instant record, could these allegations be sufficiently investigated.[2] Moreover, we note that both the State in its brief and the defendant in his reply brief agree that an evidentiary hearing is the preferred method to adequately address these issues.

Accordingly, these assignments of error are not subject to appellate review.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues he was denied his retained counsel of choice in violation of the Sixth Amendment to the United States Constitution. The defendant complains that Stavros Panagoulopoulos was slated to represent him at trial, but was detained in another trial, and Muriel Van Horn, an associate from his office, appeared in his place. According to the defendant, the trial court's ruling denying Ms. Van Horn's request for a continuance so that Mr. Panagoulopoulos could be present deprived the defendant of his right to counsel of choice.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of

---

[2] The defendant would have to satisfy the requirements of La. Code Crim. P. art. 924, *et seq.*, in order to receive such a hearing.

4

counsel for his defense. *State v. Reeves*, 2006-2419 (La. 5/5/09), 11 So.3d 1031, 1055, cert. denied, 558 U.S. 1031, 130 S.Ct. 637, 175 L.Ed.2d 490 (2009). The Supreme Court has found that it is structural error requiring reversal and a violation of the Sixth Amendment when a criminal defendant has been denied his right to retained counsel of choice. *Id.* at 1056. The Louisiana Constitution ensures similar rights to the assistance of counsel for a criminal defendant as those arising under the federal constitution. *Id.* Generally, a person accused in a criminal trial has the right to counsel of his choice. *Id.* at 1057. An indigent defendant's right to choose his defense counsel, however, only allows the defendant to retain the attorney of choice if the defendant can manage to do so. The right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. *Id.* A defendant's right to choose an attorney must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. *State v. Ventris*, 2010-889 (La. App. 5 Cir. 11/15/11), 79 So.3d 1108, 1119. The trial court's ruling on this issue will not be disturbed absent a clear showing of abuse of discretion. *Id.*

The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. La. Code Crim. P. art. 712; *State v. Strickland*, 94-0025 (La. 11/1/96), 683 So.2d 218, 229.

The record reflects that, prior to trial, the defendant retained Martin E. Regan, Jr., to represent him. On September 11, 2019, Mr. Panagoulopoulos enrolled as co-counsel for the defendant. In addition to Mr. Panagoulopoulos, Ms. Van Horn appeared on behalf of the defendant at pre-trial hearings. Mr. Regan became ill and was unable to continue representing the defendant.[3] At a June 14, 2021 pretrial

---

[3] Due to his health issues, Mr. Regan was transferred to interim disability inactive status by the Louisiana Supreme Court on July 28, 2021. See *In re Regan*, 2021-00370 (La. 7/28/21), 321 So.3d 394.

5

hearing, Mr. Panagoulopoulos requested to set the matter for trial. The following colloquy took place:

> The Court: Are y'all going to be able to proceed? Mr. Regan is going to be ready health wise?
>
> Mr. Panagoulopoulos: My understanding from Mr. Batiste is that he has stated that whoever is available from our office to try it, that we are to try it. Is that correct, Mr. Batiste?
>
> Mr. Batiste: Yes, sir.
>
> Mr. Panagoulopoulos: We will be prepared to try it at whatever date the State and Your Honor wishes to give us.
>
> The Court: All right.

On the morning of trial, Ms. Van Horn advised the trial court that Mr. Panagoulopoulos was in trial in Lafourche Parish and moved for a continuance, contending that the defendant had not hired her. Ms. Van Horn indicated that she had been on the case for six months. The trial court denied Ms. Van Horn's continuance, referencing the June 14, 2021 pre-trial hearing where the defendant agreed that whoever was available from Mr. Panagoulopoulos' office to try the case could do so. There was never an objection or protestation by the defendant regarding Ms. Van Horn's representation of him at any time during or after trial. Ms. Van Horn conducted the first part of the defendant's trial; Mr. Panagoulopoulos was present the second and third days of trial.

Based upon the above, we find the trial court did not abuse its discretion in denying the defendant's motion for a continuance based upon Mr. Panagoulopoulos' absence the first day of trial.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant argues his sentence for simple criminal damage to property is illegal because he was not convicted of this crime. The defendant is correct. Prior to opening statements, the State *nolle prossed* the

charge of simple criminal damage to property. The sentence, thus, was illegal. <u>See</u>

La. C.Cr.P. arts. 872 & 882(A). Accordingly, we vacate the two-year sentence and

remand to the trial court for correction of the commitment order, if necessary.

**CONVICTION AND SENTENCE AFFIRMED FOR ATTEMPTED SECOND DEGREE MURDER; TWO-YEAR SENTENCE FOR NOLLE-PROSSED CHARGE OF SIMPLE CRIMINAL DAMAGE TO PROPERTY VACATED AND REMANDED FOR CORRECTION OF COMMITMENT ORDER, IF NECESSARY.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 KA 0725

STATE OF LOUISIANA

VERSUS

JAMES BATISTE, III

**WELCH, J., dissenting.**

I respectfully disagree with the majority opinion in this matter. The trial court should have granted the defendant's motion for continuance on the date of trial, and its failure to do so was not only a miscarriage of justice, as the stand-in counsel that appeared at trial, Muriel Van Horn, had not reviewed all of the evidence and was not adequately prepared for trial, but it was also a violation of the defendant's constitutional right to be represented by his retained counsel of choice.

The record reflects that the defendant retained Martin Regan to represent him in this case, and that Mr. Regan's associate, Stavros Panagoulopoulus subsequently enrolled as co-counsel. Over the course of three years, the defendant was represented by Mr. Regan and/or Mr. Panagoulopoulus. However, after Mr. Regan began suffering from health issues and was compelled to take disability status, he was unable to represent the defendant. As a result, Mr. Panagoulopoulus was chosen to represent the defendant at trial. On the date that Mr. Panagoulopoulus had selected for the defendant's trial, he was detained at another trial in another parish. Therefore, Ms. Van Horn, who was from the same law firm as Mr. Regan and Mr. Panagoulopoulus, was sent to the defendant's trial. Although Ms. Van Horn

had previously appeared in court on behalf of the defendant on one occasion, it was solely for the purpose of seeking a continuance due to Mr. Regan's disability. At trial, Ms. Van Horn requested the trial court to inquire into the defendant's desire to proceed to trial with her as stand-in counsel. She also moved for a continuance on several grounds, including so that Mr. Panagoulopoulus (the defendant's counsel of choice) could conduct the trial and because she had been unable to get the video to play and due to the COVID-19 restrictions at the jail, neither she nor the defendant had not seen the video. The trial court denied both motions on the basis "that it's you and your firm's problem. It's not this Court's problem. That's a you problem."

While the trial court's frustration with the situation was evident from its colloquy with Ms. Van Horn, the trial court should have granted a continuance to protect the defendant's rights and thereafter, taken the appropriate recourse against Mr. Panagoulopoulus. Instead, the trial court punished the wrong party, forcing the defendant to go to trial with an attorney who was neither adequately prepared for trial nor his retained counsel of choice.

Therefore, I find that the trial court abused its vast discretion in denying the defendant's motion for continuance at trial, the defendant's conviction and sentence should be reversed, and this matter should be remanded for a new trial with the defendant's counsel of choice.